605 So.2d 890 (1992)
William C. WILLIAMS and Paula C. Williams, his wife, Appellants,
v.
William A. INGRAM and Marian G. Ingram, his wife, Appellees.
No. 91-3041.
District Court of Appeal of Florida, First District.
August 28, 1992.
*891 Barry A. Bobek of Jacksonville for appellants.
James C. Rinaman, Robert E. Broach, Alan K. Ragan, and Christopher D. Gray of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellees.
WOLF, Judge.
William C. Williams and Paula C. Williams, his wife, appeal from a final order compelling enforcement of a settlement between the parties. The appellants raise several issues on appeal which may be restated as one issue: Whether the trial court erred in finding that there was an enforceable settlement agreement between the parties. We find that the parties did not reach agreement as to all essential terms and, therefore, we reverse.
Appellants bought a home from appellees in Duval County. The appellants allege that prior to the sale, the appellees constructed a room addition without complying with the building and sanitation codes of the city of Jacksonville, in that the addition was constructed over the septic tank and drainfield which served the property. The amended complaint also alleges that appellees failed to disclose known latent defects which could result in contamination of the water well and erosion of the foundation beneath the addition. On December 20, 1990, the court referred the cause to mediation.
In February of 1991, the appellees moved to compel enforcement of a settlement agreement. Attached to the motion were a number of exhibits including correspondence between the counsel for both parties, an unexecuted stipulated settlement, and an unexecuted release. Appellees contended at oral argument that the appellees' letter of March 21, 1990, the appellants' letter of May 8, 1990, and the appellees' response of May 14, 1990, constitute an offer, a counter offer, and an acceptance, respectively.
The March 21, 1990, letter from appellees' attorney indicates that appellees would pay to have a new septic tank and drainfield installed, would pay to reconnect the plumbing, would pay to have the old septic tank pumped out and filled with concrete, and the letter invited appellants to comment on these proposals. On May 8, 1990, appellants' attorney responded. The full text of this response which is contended by appellees to be either an acceptance or counter proposal is as follows:
Dear Mr. Booher:
In response to your letter of March 21, 1990, allow me to advise you that my clients are amenable to a cure of the kind you have proposed in your letter. We are not confident that the required results *892 can be obtained for the figures stated in your letter, but as you are prepared to perform the list of repairs, we are prepared to allow you to commence that undertaking. We would ask that each contractor or subcontractor employed by the Ingrams provide us each with a detailed proposal of the material and labor to be furnished and a covenant that the owners will be held harmless from the expense. As I expect this will meet with your approval, I look forward to hearing from you.
Very truly yours,
Barry A. Bobek
On May 11, 1990, appellants sent the following letter:
Dear Mr. Booher:
The enclosed disposal system construction permit might be useful for your clients' review in connection with my recent letter accepting the concept of your proposal. It should have been included with my letter.
Very truly yours,
Barry A. Bobek
On May 14, 1990, appellees responded as follows:
Dear Mr. Bobek:
This letter will acknowledge receipt of your letter of May 8, 1990, accepting our offer of settlement as outlined in our March 21, 1990 letter.
As you requested in your [letter of] May 8, 1990, Mr. Ingram will provide to you and your clients a detailed proposal of the material and labor to be furnished in performance of the work on the property at 150 Odell Street, and the contractors or subcontractors will provide covenants that your clients will be held harmless from any expense.
We would appreciate your letting us know the most convenient time for Mr. Ingram and his contractors and subcontractors to begin their work on the property.
Also, before any work is undertaken on the property, we will need to enter into a stipulation in settlement of this matter, providing for the settlement and dismissal of this action pursuant to the terms we have discussed. I will prepare a stipulation and a release and will send it to you as soon as possible.
If you have any specific language which you wish me to include in a stipulation and release, please send it to me so that I can incorporate it into the documents.
Yours very truly,
Marks, Gray, Conroy & Gibbs
Douglas A. Booher
In early June, appellees sent a proposed written settlement agreement to appellants. Appellants never executed the proposed settlement agreement. Based upon the correspondence between the parties, appellees asked the court to find the existence of an enforceable settlement agreement.
Following an unrecorded hearing on appellees' motion to compel enforcement of settlement, at which no testimony was presented, the trial court rendered a final order. The April 19, 1991, order reported the judge's finding that the parties entered into a valid and enforceable agreement to settle the claims presented in the lawsuit. The order states that the essential terms of the settlement were set forth in the settlement agreement which was filed with the motion to compel enforcement of settlement.
Within ten days, the appellants filed a motion for rehearing supported by an affidavit of the appellants.[1] The affidavit stated *893 essentially that the appellants believed no settlement would be made by counsel without their approval. Appellants contend that no approval was given except to negotiate for an in-kind cure as opposed to a cash settlement. Also, according to appellants, negotiation and on-site inspection was still in progress after the early June correspondence. The trial court denied the appellants' motion for rehearing.
Several general principles have emerged concerning enforcement of a disputed settlement agreement. Settlement agreements are to be interpreted and governed by the law of contracts. Don L. Tullis and Assocs., Inc. v. Benge, 473 So.2d 1384 (Fla. 1st DCA 1985). A party seeking a judgment on the basis of compromise and settlement has the burden of establishing assent by the opposing party. Carroll v. Carroll, 532 So.2d 1109 (Fla. 4th DCA 1988), rev. denied, 542 So.2d 1332 (Fla. 1989).[2] The moving party must establish a meeting of the minds or mutual or reciprocal assent to a certain and definite proposition. Goff v. Indian Lake Estates, Inc., 178 So.2d 910 (Fla. 2d DCA 1965). While uncertainty as to an agreement as to nonessential or small items will not preclude a finding of an enforceable settlement, the agreement must be sufficiently specific and mutually agreeable as to every essential element. Don L. Tullis and Assocs., Inc., supra; Blackhawk Heating and Plumbing Co. v. Data Lease Financial Corp., 302 So.2d 404 (Fla. 1974); Gaines v. Nortrust Realty Management, Inc., 422 So.2d 1037 (Fla. 3d DCA 1982).
In addition, unauthorized assent by a party's attorney is generally not sufficient to bind a party to a settlement agreement. See Goff, supra; Carroll, supra. Preliminary negotiations or tentative and incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement. Goff, supra at 912. Nor may an agreement be determined to be final where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement. Albert v. Hoffman Elec. Constr. Co., 438 So.2d 1015 (Fla. 4th DCA 1983). Applications of these principles help assure *894 that parties to litigation will not unintentionally be deprived of their access to a judicial determination, and that parties and their legal representatives will negotiate settlements without fear of unintentionally entering into a binding agreement.
In the instant case, the trial court improperly found a binding settlement to exist where (1) the communications between the parties only established an agreement in concept between the parties; (2) agreement had not been reached on all essential terms, specifically the communications between the parties demonstrated an intent that there be further clarification concerning placement of the septic tank; and (3) there is no evidence that the appellants themselves assented to the agreement or gave the attorney clear and unequivocal authority to enter into an agreement.
While the March 21, 1990, letter from the appellees' attorney lists a number of steps that his clients would be willing to undertake to settle the matter (including construction of a new septic tank), the response of May 8, 1990, cannot be considered either unequivocal acceptance or a counter offer. This letter merely said that the appellants were "amenable to a cure of the kind you have proposed," and requested further details. The letter appears to be nothing more than an offer to negotiate further along the lines proposed. This is confirmed by the appellants' letter of May 11, 1990, indicating that the earlier May 8, 1990, letter was "accepting the concept of your proposal," thus indicating that the specifics of any agreement still needed to be worked out. Even the May 14, 1990, letter from appellees indicated that a formal settlement and dismissal would have to be prepared.
The only possible agreement between the parties which appears from the face of these letters is that the parties were amenable to a settlement which would involve the replacement of the septic tank. Details of the proposal were still to be completed.
As appellants point out in their brief, the placement of the replacement septic tank system and drainfield as well as the details of the proposed labor and materials to be furnished, remained open. These matters were items that needed to be resolved prior to a settlement agreement according to the May 11, 1990, letter of appellants. These items went to the heart of the litigation between the parties and needed to be resolved prior to a formal settlement being reached. There is also no indication in the correspondence presented to the court at the time of the hearing that the appellants themselves consented to a settlement agreement. Appellees argue that language contained in the affidavit of appellants in support of the rehearing on the motion to enforce settlement indicates appellants' acceptance of the settlement. The language relied on by the appellees was that the appellants "agreed that an attempt to cure this aspect of the problem, rather than pay cash damages ... would be acceptable." Even if appellants may rely on this affidavit, which was not available at the original hearing, the text of the full affidavit reveals that (1) appellants felt that this proposed solution addressed only a portion of the overall problem, and (2) appellants never gave their attorney authority to settle on this basis. The affidavit also establishes that the appellants were skeptical about the ability of the appellees' workmen to engineer a solution to this part of the problem, and that the layout and workmanship concerning the proposed remedy were essential elements to be resolved prior to reaching a settlement agreement.
We conclude, therefore, that there was no settlement agreement, and the trial court's judgment purporting to enforce a settlement agreement must be reversed.
ZEHMER and KAHN, JJ., concur.
NOTES
[1] The full text of the affidavit reads as follows:

BEFORE ME, the undersigned authority, personally appeared William C. Williams and Paula C. Williams, who, being first duly sworn, depose and say that:
1. We received from our attorney a copy of the March 21, 1990 letter from Douglas A. Booher in which he addressed some of the problems and how they might be resolved.
2. After receiving a copy of the letter, we discussed the proposal with our attorney by telephone and agreed that, at least some progress toward resolving the case was being made.
3. While the proposal was about only one of the several problems created by the septic tank underneath our house, namely, the placement of the septic tank itself, we agreed with counsel that the Defendants should be allowed to investigate and obtain bids for moving the septic tank within the limited area our lot provides.
4. We were skeptical about the ability of the Defendants' workmen to engineer a solution to this part of the problem for the sums referenced in the March 21, 1990 letter, but agreed that an attempt to cure this aspect of the problem, rather than pay cash damages to us, would be acceptable. We later furnished a disposal system construction permit we received so that the planning of an in-kind cure might meet Code requirements.
5. Our attorney explained when we first met that he could not settle any claim on our behalf without our approval.
6. We never gave our attorney authority to settle this case or any particular aspect of it. To the contrary, we authorized only acceptance of the concept of an in-kind cure, as opposed to a damage award, provided the layout of the septic tank system and the workmanship and expenses of the contractors could be arranged to our satisfaction.
7. After the correspondence accepting the concept of the Defendants' proposal, our attorney and Paula C. Williams met on site with just one of the contractors of the Defendant and discussed the advantages and disadvantages of various layouts for a new septic tank system. We arrived at no conclusions and authorized no further efforts until the risk of further foundation failure and impact upon existing water wells could be established. This on-site meeting was conducted on July 3, 1990. Our attorney's notes about our concerns over this part of the cure were made on his original of the June 1, 1990 correspondence from counsel for the Defendants. These notes were made in consultation with and in the presence of Paula C. Williams and are shown on the copy of that correspondence attached hereto.
Further, the affiants sayeth naught.
[2] The Third District Court of Appeal in Ogden v. State of Florida Dep't of Transp., 601 So.2d 1300, (Fla. 3d DCA 1992), discussed the level of this burden of proof. In that case, the court held that the "plaintiff failed to establish the terms of a viable and binding oral agreement by clear and convincing evidence." Id. at 1302. While there are a number of policy reasons for adopting this greater standard of proof (e.g., not denying a party access to courts and not creating a chilling effect on settlement negotiations), we cannot ignore the fact that Florida courts have uniformly held that settlement agreements are to be interpreted in accordance with the general law of contracts. The standard of proof would, therefore, appear to be a preponderance of the evidence.