652 So.2d 929 (1995)
Robert J. WALZ, Appellant,
v.
Margie G. WALZ, Appellee.
No. 93-4038.
District Court of Appeal of Florida, First District.
March 29, 1995.
*930 Carroll L. McCauley of McCauley & Peters, Panama City, for appellant.
Robert B. Staats of Staats, White & Clarke, Panama City, for appellee.
JOANOS, Judge.
In this appeal of a final order of dissolution of a 30 year marriage, appellant contends the trial court erred in determining that an oral settlement agreement allegedly made by the parties outside the presence of the court was binding and enforceable and disposed of all issues. We agree with appellant and therefore reverse the order and remand for further proceedings.
The final hearing in this dissolution case was scheduled for October 12, 1993. On October 11, 1993, appellee filed a motion alleging she and appellant had met on September 21, 1993, and settled all issues as set forth in her motion. On September 21, 1993, the parties met at the Runaway Island nightclub and restaurant in Panama City Beach at about 5 PM. Their discussion lasted for about three-and-a-half hours. Appellee brought with her a listing of all household furnishings and tangible personal property, which she maintained on her computer. Husband brought with him a printed form that appellee described as a settlement agreement. The parties went through the list of household furnishings, reached agreement on all items, and both signed the form at the bottom, initialing any changes. Both parties left the meeting with signed copies of the household furnishings list.
According to appellee, the parties also reached a meeting of the minds as to all other issues, including lump sum and rehabilitative alimony, ownership of automobiles, life insurance, ownership of stock, ownership of the marital home, distribution of pension plans and IRAs, medical insurance, and responsibility for marital debts. The parties did not sign the form appellant had brought with him to the meeting and took notes on, nor did they each keep copies of any such settlement agreement. According to appellee, at the close of their meeting, appellant said he would have his lawyer reduce the agreement to writing. Appellee asserted that since all issues were settled at the close of this meeting, she called a moving company the next day for a 30-day binding estimate of the cost of moving her furnishings to New Orleans, and that she ceased communications with her attorney. She also testified that several days after their meeting, when she had not heard from appellant, she called him and he began to vacillate, saying he did not think the agreement was in his best interests. Appellee also testified she had not made notes of the alleged settlement agreement, as appellant had the form in front of him. In her motion filed the day before the scheduled hearing, she set forth in detail the terms of the settlement agreement.
Appellant agreed that they had met at the Runaway to try to come to an agreement before the hearing, although he was surprised at the location appellee chose. He indicated that they drank several beers during the three-and-a-half hour discussion, and that there was not much privacy. He said that after they had several beers, he began to respond to appellee's requests with "okay, okay," in order not to cause any embarrassment or create a scene. He concurred that their agreement on household furnishings was firm, but asserted that after thinking over their conversation as to alimony, the marital home and other provisions, there *931 were some things he could not agree to, and in his view, any agreement would be binding when it was signed. He understood they had been encouraged to try to settle, and that there would be ongoing discussions to that end, and that when they finally came to agreement and signed it, it would be binding. He said he was not aware what they worked on in the restaurant would be considered concrete. He said he did not offer to take the agreement to his attorney, but that appellee told him to do so, although he probably agreed to do it. He did not recall discussing all of the items listed in appellee's motion, and did not agree they had discussed amounts listed in appellee's motion. In particular he disputed that he had agreed to pay $800 per month in rehabilitative alimony for five years. He said it had been his idea to meet, although appellant chose the location, that he no longer had the paper he brought to the meeting in his possession, and that they had both marked on it.
The trial court ruled that they had made a binding oral agreement at the restaurant, and proceeded to take testimony as to the values set forth in appellee's motion. We conclude that the trial court's finding that there had been a meeting of the minds is not supported by competent substantial evidence.[1]
We recognize that settlements are highly favored in the law. Mortgage Corp. of America v. Inland Construction Co., 463 So.2d 1196 (Fla. 3d DCA 1985), and Dorson v. Dorson, 393 So.2d 632 (Fla. 4th DCA 1981). However, the following provides appropriate guidance for resolution of this case:
A party seeking a judgment on the basis of compromise and settlement has the burden of establishing assent by the opposing party... . The moving party must establish a meeting of the minds or mutual or reciprocal assent to a certain and definite proposition... . While uncertainty as to an agreement as to nonessential or small items will not preclude a finding of an enforceable settlement, the agreement must be sufficiently specific and mutually agreeable as to every essential element. Preliminary negotiations or tentative and incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement... . Nor may an agreement be determined to be final where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement... . Applications of these principles help assure that parties to litigation will not unintentionally be deprived of their access to a judicial determination, and that parties and their legal representatives will negotiate settlements without fear of unintentionally entering into a binding agreement.
Williams v. Ingram, 605 So.2d 890 (Fla. 1st DCA 1992).
Appellee did not meet her burden of establishing assent by the opposing party. We note particularly the somewhat coercive surroundings of the parties' meeting at the Runaway restaurant, leading appellant to say "okay, okay," to many items; and that they both left the meeting with a written, signed agreement on household and personal items, but no written agreement on the other items.
The cases appellee cites as authority are distinguishable. In Roskind v. Roskind, 552 So.2d 1155 (Fla. 3d DCA 1989), the court held that "[a] stipulation properly entered into the record, where there is a clear understanding of the finality of that agreement, is an effective and enforceable settlement notwithstanding that it is subject to reduction to a written agreement." In that case, the terms of the agreement had been read into the record and Mrs. Roskind, who later objected to the agreement and refused to sign it, had affirmed her understanding and agreement on the record.
Similarly, in Silva v. Silva, 467 So.2d 1065 (Fla. 3d DCA 1985), a settlement agreement was affirmed where counsel for both parties announced to the judge at a status conference that their clients had reached a settlement, although the terms were not dictated into the record as in Roskind. See also Cohen v. Cohen, 629 So.2d 909 (Fla. 4th DCA *932 1993) (expressly approving oral settlement agreements announced in open court), and Loss v. Loss, 608 So.2d 39, 42 (Fla. 4th DCA 1992) ("assent to the terms of an oral settlement agreement, which has been negotiated off the record, must be entered on the record at some point in order to be affirmed on appeal").
REVERSED and REMANDED for further proceedings consistent with this opinion.
LAWRENCE and BENTON, JJ., concur.
NOTES
[1] We also agree that at least one provision of the alleged oral agreement, the payment of rehabilitative alimony for five years, would violate the Statute of Frauds.