658 So.2d 1096 (1995)
Deborah D. HEALEY, n/k/a Deborah D. Young, Former Wife, Appellant,
v.
Russell L. HEALEY, Former Husband, Appellee.
No. 94-2568.
District Court of Appeal of Florida, First District.
July 13, 1995.
Rehearing Denied September 8, 1995.
Michael J. Korn of Prom, Korn & Zehmer, P.A., Jacksonville, for appellant.
Lacy Mahon, Jr. and Mark H. Mahon, Jacksonville, for appellee.
VAN NORTWICK, Judge.
Deborah D. Young, formerly Deborah D. Healey, appeals an order of the trial court denying her motion to set aside or reconsider a visitation order which had been entered based upon a proposed order submitted to the trial court by her former husband, appellee, Russell L. Healey. In her motion, Young represented that the proposed order was to have been submitted as a consent order, that she had not consented to the proposed order submitted to the court, and that the court's order did not reflect the *1097 parties' agreement. Based on the representations in the motion, we find the trial court should have held a full evidentiary hearing to address the issues raised by the motion and, therefore, we reverse and remand for further proceedings.
The parties were divorced in September 1986. In November 1992, Young filed a petition to modify custody and visitation, which was met by a response from Healey also seeking modification of the existing visitation schedule. On April 22, 1993, the date scheduled for a trial on the visitation matters, the parties met at the courthouse; but, rather than proceeding with trial, the parties entered into negotiations in an attempt to resolve their differences. The courthouse negotiations resulted in the parties dictating the terms of a stipulation to a court reporter. In this stipulation, the parties agreed that a proposed order incorporating the dictated terms would be prepared, reviewed by the parties and their attorneys, and then submitted to the trial court.
That same evening, the parties spoke by telephone, at which point it became clear to Young that the parties had markedly different interpretations of the terms of the supposed agreement dictated earlier. According to her, she repudiated any agreement that evening. On the other hand, Healey contends the dictated stipulation reflects the full and complete agreement of the parties. He submits his former wife merely "changed her mind."
A few days later, Healey's attorney prepared and sent to Young's attorney a proposed consent order, purporting to incorporate the terms of the dictated stipulation of the parties. On May 25, 1993, counsel for the former husband submitted to the trial court a proposed order and a transcript of the stipulation dictated on April 22. On May 27, the trial court entered an order modifying custody and visitation which adopted the proposed order submitted by Healey's counsel.
Promptly thereafter, Young filed a motion for rehearing or, alternatively, to set aside or amend the May 27 order. In her motion, Young alleged, among other things, (i) that the dictated stipulation was only an "outline" or a "draft" of an agreement which was to be reduced to writing prior to submitting a proposed order to the trial court; (ii) that the parties had different understandings concerning the terms of the agreement allegedly reflected by the stipulation; (iii) that the proposed order was submitted to the trial court without any consultation or notice to her or her counsel; and (iv) that the order did not accurately reflect the parties' purported agreement.
The trial court found that a hearing on Young's motion was necessary. At a hearing on December 21, 1993, counsel for the respective parties each made argument to the court, but sworn testimony was not adduced. Based on our review of the record, it appears that this hearing ended prematurely when the trial court, in a highly commendable effort to assist the parties in resolving their visitation dispute without judicial intervention, ordered the parties to attend a "Children First in Divorce" class and to submit their dispute to mediation. The parties attended the required classes and did go through mediation, but to no avail. After receiving notice of the parties' impasse in mediation, on July 5, 1994, without further hearing, the trial court entered the order summarily denying Young's motion.[1]
*1098 On appeal, Young argues that the trial court erred and abused its discretion in denying her motion to set aside the visitation order without a full evidentiary hearing. We agree. We recognize that settlement agreements are highly favored in the law and will be upheld whenever possible. Walz v. Walz, 652 So.2d 929, 931 (Fla. 1st DCA 1995). Nevertheless, where representations of counsel indicate a material dispute concerning whether preliminary negotiations reached the level of a binding agreement, both parties should be given a full and fair opportunity to prove their version of the proposed settlement. Bruce Inv. Corp. v. Beider, 400 So.2d 808, 809 (Fla. 3d DCA 1981). "A contrary procedure in those relatively few cases where an honest dispute develops over offer and acceptance would discourage preliminary negotiations toward settlement." Massachusetts Cas. Ins. Co. v. Forman, 469 F.2d 259, 261 (5th Cir.1972).
Here, we believe that the manner in which the order below was submitted to the trial court inadvertently led that court to believe that the parties had agreed to the terms of the proposed order. Once counsel for the former wife represented that this order was not assented to by his client, the trial court should have held a complete evidentiary hearing to resolve the dispute. Bruce Investment Corp., 400 So.2d at 809. Having terminated the December 21 hearing before receiving evidence to allow the parties an opportunity to resolve their visitation differences outside of the courtroom, when the trial court learned that the parties had reached impasse in mediation, the court should have either completed the hearing begun on December 21 or held a new hearing to fully address the issues raised in the motion of the former wife.
As a result, in this case there remain material issues concerning whether the order submitted by counsel for the former husband reflects the agreement of the parties. Further, the conflicting representations of the parties in this case are not subject to summary disposition. Upon remand, the trial court shall determine, based on sworn testimony, whether Young assented to its order entered on May 27, 1993, and whether the order reflected the understandings of the parties. If the trial court concludes that its May 27 order did not reflect the parties' agreement, the April 22, 1993, stipulation may still constitute the agreement of the parties. Accordingly, upon a party's motion to enforce the April 22 stipulation as a binding agreement, the trial court should then determine whether the stipulation constitutes a binding settlement agreement.
As a guide for the trial court, we note this court's opinion in Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992), in which we stated:
A party seeking a judgment on the basis of compromise and settlement has the burden of establishing assent by the opposing party. The moving party must establish a meeting of the minds or mutual or reciprocal assent to a certain and definite proposition. While uncertainty as to an agreement as to nonessential or small items will not preclude a finding of an enforceable settlement, the agreement must be sufficiently specific and mutually agreeable as to every essential element
.....
Preliminary negotiations or tentative and incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement. Nor may an agreement be determined to be final where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement. Applications of these principles help assure that parties to litigation will not unintentionally be deprived of their access to a judicial determination, *1099 and that parties and their legal representatives will negotiate settlements without fear of unintentionally entering into a binding agreement. (Citations omitted).
See also, Walz v. Walz, 652 So.2d at 931 (the trial court's finding that there had been a meeting of the minds must be supported by competent substantial evidence); Roskind v. Roskind, 552 So.2d 1155 (Fla. 3d DCA 1989). Nothing in this opinion, however, should be construed as an indication that this court has reached any conclusions concerning whether the parties had assented to the terms of the May 27 order, whether the May 27 order reflects an agreement of the parties, or whether the April 22 dictated stipulation constitutes a binding and enforceable agreement of the parties. Those matters remain for determination by the trial court.
REVERSED and REMANDED for further proceedings consistent with this opinion.
BOOTH and JOANOS, JJ., concur.
NOTES
[1] Notwithstanding our reversal, we commend, and not criticize, the attempt of the trial court to facilitate the parties reaching their own agreement outside of the adversarial system. These types of efforts by a trial court are in keeping with the following suggestions of Justice Barkett concerning the resolution of custody and visitation issues:

The role of the courts in cases involving divorced parents should ... be to ... urge the parents to seek a mutually acceptable solution for the best interests of their children. As Professor Schepard notes, it is far better to resolve these issues through mediation than through the adversarial process:
If the parents had not divorced they would have negotiated with each other about proposed relocations. Mediation requires them to undertake that same negotiation with the help of a neutral party. The neutral party is necessary because the forces that encourage married parents to compromise with each other have been weakened by divorce, and the neutral party reminds them of their continuing joint interest in the welfare of their child.
In the vast majority of cases parents truly are concerned about the best interests of the children and, with some encouragement, will reach a solution that satisfies those interests. Sadly, the adversarial system, which too often fosters hostility and bitterness, frequently prevents parents from engaging in the types of discussions that are necessary to reach a mutually acceptable arrangement.
Mize v. Mize, 621 So.2d 417, 421 (Fla. 1993) (Barkett, C.J., concurring) (quoting Andrew Schepard, Taking Children Seriously: Promoting Cooperative Custody After Divorce, 64 Tex.L.Rev. 687, 782 (1985)) (citations omitted).