745 So.2d 578 (1999)
James PATRICK, Appellant,
v.
CHRISTIAN RADIO, etc., et al., Appellee.
No. 98-2781.
District Court of Appeal of Florida, Fifth District.
December 10, 1999.
Edwin R. Ivy, Orlando, for Appellant.
S. Scott Walker of Watson, Folds, Steadham & Walker, P.A., Gainesville, for Appellee.
THOMPSON, J.
James Patrick appeals the trial court's Final Judgment Granting Motion to Enforce Settlement Agreement. Patrick contends that the trial court erred in finding an enforceable settlement because no settlement agreement had been "signed, sealed and delivered" by the parties. We affirm.
Patrick filed his Amended Complaint in October 1995 alleging fraud on creditors and breach of fiduciary duty against, among others, Keith Walker and Walker Heart of Florida Broadcasting, Inc. (collectively, "Walker"), in regard to the ownership of a local radio station. In his *579 Amended Complaint, Patrick contended he had obtained a $223,775.00 judgment in 1988 against Christian Radio Communications, Inc., the previous owner of the station and that he had not been paid any money as to that judgment. Patrick alleged that when Walker bought the radio station from Christian Radio Communications, Inc., Walker and Christian Radio Communications, Inc., committed a fraudulent transaction as to Patrick, an unsecured creditor of the radio station.
After two years of litigation, settlement negotiations began. On September 4, 1997, Walker and Patrick agreed to settle the law suit for a one-time payment from Walker to Patrick of $51,000.00. Walker's attorney drafted the settlement agreement and forwarded the agreement to Patrick's attorney on September 5, 1997. Over the next several days, additional telephonic conversations took place to further refine the terms of the settlement agreement. On September 8, 1997, Patrick's counsel faxed a letter to Walker's counsel, stating in part: "This letter will confirm my understanding of our telephone conversation regarding settlement earlier today ... to quicken the settlement process, the agreement may be executed in counterparts." The letter also provided, "[i]f at all possible, please fax the amended version of the agreement and releases to me by 3:00 PM today and I will get them out to [Patrick] for [his signature] by overnight mail today." Walker arranged financing in order to deposit the settlement amount in Patrick's attorney's trust account.
David Campione, one of Patrick's attorneys, testified at the hearing on the motion to enforce settlement that he and his firm had authority to settle this case with Walker for that amount. He did counterbalance those statements by testifying that he did not believe a settlement had been explicitly reached at that point. Campione testified that he believed this settlement agreement had to be conveyed to Ben Griffin, another attorney for Patrick involved in the case, who had initially handled the case but then hired Campione's firm. He asked Patrick to advise Griffin of the settlement; the next day, after speaking with Griffin, Patrick advised Campione he did not wish to settle. Campione's firm contacted Walker's counsel to advise them that a settlement would not be reached.
Less than a week later, a hearing was held before the trial judge to determine whether Campione's firm or Ben Griffin represented Patrick, as it became clear that Griffin had recommended against settling, whereas Campione had advised settling. Patrick stated that he considered Griffin his attorney. The trial judge did not rule on the matter; he simply pointed out that if Patrick considered Griffin his attorney, then Campione's law firm was no longer representing him.
The court took judicial notice of this record during the later hearing on the motion to enforce the settlement agreement. During the earlier hearing on the question of Patrick's attorney conflict, Patrick made several statements which the trial court relied on to determine that a settlement agreement was reached in September 1997 and therefore should be enforced:
I thoughtwell, I just want toYou know, it would be nice for me to be able to get rid of this, and, I'm not able to fool with it right now. And that was the proposal. But, at the outset, I told David [Campione] and Jason [Campione's associate], yes, that I wouldI would consider doing that, and I was leaning toward that.
* * *
During this several-day period there, recently, like, last week, week before, I guess, and I told them that, yes, that's kind of what I wanted to do [settle the case].
* * *
My initial reaction to that, sir, was thatpardon me, sirthat I agreed *580 with them, that I wanted to make a settlement, and that we'd go ahead and settle.
* * *
And, at that time, I had to tell them that, yes, that's what I wanted to do. I started to get, I guess, to get what you would call buyer's remorse, and something wasn't right about this.
The trial court determined that "[b]y [Patrick's] own statements it is clear that [Patrick] was aware of the terms of the settlement and had agreed to same." The trial court determined that the settlement should be ratified and affirmed.
The First District Court of Appeal recently stated:
Settlements are highly favored as a means to conserve judicial resources, and will be enforced when it is possible to do so. Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483 (11th Cir. 1994); Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985); Healey v. Healey, 658 So.2d 1096, 1098 (Fla. 1st DCA 1995). Settlements are construed in accordance with the rules for interpretation of contracts. Robbie, 469 So.2d at 1385; Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992).
Long Term Management, Inc. v. University Nursing Care Center, Inc., 704 So.2d 669, 673 (Fla. 1st DCA 1997).
Moreover, since the trial court conducted a full evidentiary hearing before determining there was a settlement here, the findings of the trial court:
[C]ome to this court clothed with a presumption of correctness, and where there is substantial competent evidence to sustain the actions of the trial court, the appellate court cannot substitute its opinion on the evidence but rather must indulge every fact and inference in support of the trial court's judgment, which is the equivalent of a jury verdict. [citations omitted]. Because it is the trial court who has the first-hand opportunity to hear and observe the witnesses as they testify, the trial court is in a superior position to weigh the evidence and credibility of the witnesses. Accordingly, it is not the function of an appellate court to substitute its judgment for that of the trial court unless there is a lack of competent substantial evidence to support the findings upon which a final judgment is based.
Smiley v. Greyhound Lines, Inc., 704 So.2d 204, 205 (Fla. 5th DCA 1998)(emphasis added) (citations omitted). Therefore, if there is competent substantial evidence to support the trial court's determination that there was an enforceable settlement reached here, then this Court must affirm that decision. We think there was competent substantial evidence to support the trial court's decision.
Patrick argues that the parties were close to a settlement on these facts but because the text of the settlement requires it be executed to be effective, there was no contract and thus the trial court was incorrect in determining there was an enforceable settlement. The language in the proposed settlement agreement Patrick relies on reads:
[Walker] shall pay the trust account of David Campione, Esquire the sum of $51,000.00, which shall not be distributed until the executory documents referenced in this agreement have been signed, sealed and delivered to the appropriate parties.
On its face, this language does not appear to delay a settlement until after the settlement money has been paid out and the "executory documents" have been "signed, sealed and delivered;" rather, this clause appears to be directional as to how events should unfold in light of the settlement that had been reached.
This case is quite similar to Smiley, in which the appellant hired an attorney to pursue a wrongful death claim against Greyhound for the allegedly negligent operation of a bus that resulted in her daughter's *581 death. Id. at 205. After the appellant discharged this attorney two years later, the attorney alleged that he accepted an offer of settlement from Greyhound with the appellant's authorization. Id. Greyhound filed a motion to approve and enforce the settlement; after a full evidentiary hearing, the trial court enforced the settlement. Id. This court affirmed that decision, finding that "[t]he trial court's findings that [appellant] gave her former attorney ... clear and unequivocal authority to settle her wrongful death claim is supported by substantial competent evidence...." Id. at 206.
Implicit in Smiley is a determination that an actual transfer of the settlement monies or signing of documents was unnecessary, as neither apparently took place. Rather, the key to determining whether a valid settlement has been reached is whether the settlement agreement is sufficiently specific and mutually agreeable as to every essential element. Id.; see also Long Term Management, Inc.
In Smiley, the appellant's attorney apparently expressly testified that a settlement had been reached, whereas in the instant case Campione testified that he felt a settlement was "a hair's length away" when negotiations broke down at Patrick's behest. Nevertheless, Patrick himself testified that he had given Campione settlement authority and had agreed to settle the case for $51,000.00. That testimony, coupled with Campione's concession that all the essential terms of this agreement had been agreed to, constituted competent substantial evidence to support a determination that this settlement was enforceable.
AFFIRMED.
ANTOON, C.J., and HARRIS, J., concur.