On Motion for Clarifícation

WARNER, J.
We grant the motion for clarification, withdraw our previously issued opinion and substitute the following in its place in order to correct a scrivener’s error.
The wife appeals a final judgment of dissolution which awarded her no relief, because the court found that she had entered into an oral settlement agreement two years prior to the institution of dissolution proceedings. Because the husband did not prove the wife’s assent to all the significant terms of the agreement, we reverse.
The parties first lived together in 1994. At that time they agreed that the 'wife would pay all of their bills, while the husband attended school. In 1997 the parties married and purchased a home. By 2000 problems arose in the marriage. According to the wife, the husband needed to feel he was in control of the parties’ finances. He insisted that he needed the house in his name alone because her credit was bad. In addition, the wife testified without opposition that there was domestic violence in the home.
When the marital problems arose, the husband secured forms to file for a divorce. The parties went to a lawyer/mediator to work out a “settlement.” After working out issues in a meeting, the wife signed a quitclaim deed transferring her interest in the house to the husband. In exchange, the husband was to refinance the house and give her $50,000 as well as the title to the family vehicle. The wife was to remove his name from the promissory note on the vehicle. Instead, the husband paid off the car loan and gave the wife approximately $30,000. These transactions occurred in the summer of 2001.
The parties resumed marital life and went to counseling. The wife paid for portions of the home bills. At some point the abuse recommenced, and the wife was required to obtain a domestic violence injunction. In May 2003 the husband filed for divorce. In his petition he requested an equitable distribution of the parties’ assets. The wife answered agreeing to his request for an equitable distribution of marital assets. The proceedings languished until the husband secured a lawyer. He then moved to amend his pleadings to assert that the parties had entered into an oral marital settlement agreement. The wife filed an answer denying many of the alleged terms of the agreement.
Instead of setting the case for a final hearing, the husband moved to enforce the “marital settlement agreement.” At the hearing, the husband appeared with his attorney and the wife appeared without counsel. The court asked whether the wife wanted to go ahead with the dissolution of the marriage, and she did not object. Therefore the proceedings turned into a final trial.
Despite the presence of the husband’s attorney, the court did most of the questioning of the parties. The parties disagreed on what occurred during their nego *318 tiations in 2001. The husband contended that the wife agreed to the terms of the settlement which consisted of the following: 1) the wife would quitclaim her interest in the home to the husband, and the husband would refinance the mortgage to pay the wife $50,000 as her equitable share of the home as well as his retirement and savings accounts; 2) the wife was to pay for her share of the refinancing costs incurred by the husband; 3) the wife would obtain the removal of the husband’s name on the family vehicle, or if the wife could not remove it, the loan would be paid off from the wife’s $50,000 equity in the house; 4) upon completion of the refinancing, the wife agreed to move from the property after one year from the refinancing in June 2001, provided that during the interim she would pay half of the household costs.
The wife, on the other hand, testified that she agreed to quitclaim the home to the husband to stop the violence. While she agreed that she was to pay the car loan, she did not agree that it was to be paid from the $50,000, and she vehemently did not agree that the $50,000 payment extinguished all of her rights to future equity in the home or the savings accounts. Instead, her understanding of their agreement was that if in the future they sold the home, her $50,000 payment would be deducted from her half, but she would get the remainder of her share of the equity. By the time of the final hearing, she estimated the additional equity in the home at $100,000. Further, the savings accounts were not part of the agreement. She also did not agree that he was to pay the car off. She had other alternative means of dealing with the car payments, and she felt that she needed the $50,000 in case their reconciliation failed. While the husband claimed that she owed him some payments for her share of the household expenses, she denied owing any, claiming that she had exhausted the remaining $30,000 in paying household expenses and one-half of the mortgage. She denied having any agreement that she should move out of the home.
After the court interrogated the parties regarding the 2001 agreement for a short period of time, it determined that there was an agreement in accordance with the husband’s terms, except the court disagreed with requiring the wife to share 100% of the refinancing costs. The court was also disinclined to find that the wife owed the husband any further sums for home expenses. After indicating how it intended to rule, the court asked the husband’s lawyer if she wanted to talk with her client. After a few minutes, the lawyer announced that her client would agree with the ruling. The wife maintained that it was not consistent with her understanding of their agreement. She then asked about the other uncovered issues, including the husband’s IRA accounts, which she claimed would be divided upon divorce. She also claimed alimony because she could not work.
At that point the husband’s lawyer noted that the mediator could offer testimony on the subject of the mediated agreement. The court called the mediator to the stand and interrogated her. The mediator testified that the parties came to her after they reached an informal agreement which she was to reduce to writing. Although nothing was in fact written down, the mediator thought that the parties came to an agreement. She claimed that by the time the parties came to her, they had agreed on everything, and the agreement included no alimony and “no IRA.” However, later the mediator testified that the savings accounts were “not part of what was brought to me simply because I was told you reached agreement on everything else.” *319 Moreover, she stated that she was not a constant participant in the negotiations.
Because the wife complained about other accounts which were not included, the court gave the wife a short period to come up with any further evidence on undisclosed assets. At a second hearing, the wife was represented by an attorney. He demanded mandatory financial disclosure, which had never been made, but the court denied the request. The court heard additional testimony regarding an undisclosed account in the name of the husband’s sister from which the husband began drawing $25,000 shortly after the settlement in 2001. Despite this evidence, the trial court refused to change its ruling, and the court entered final judgment. The wife appeals.
The husband seeks to enforce an oral settlement agreement with his wife on the basis of performance. The wife, on the other hand, disputes the agreement’s exec-utory terms, in particular that it covered the increased equity in the home after its execution, other savings accounts, and the subject of alimony. Because the husband failed to show the assent of the wife as to the executory provisions of the agreement he now alleges, we reverse.
In Walz v. Walz, 652 So.2d 929, 931 (Fla. 1st DCA 1995), the first district provided guidance regarding the enforceability of oral settlement agreements in dissolution cases:
A party seeking a judgment on the basis of compromise and settlement has the burden of establishing assent by the opposing party.... The moving party must establish a meeting of the minds or mutual or reciprocal assent to a certain and definite proposition.... While uncertainty as to an agreement as to nonessential or small items will not preclude a finding of an enforceable settlement, the agreement must be sufficiently specific and mutually agreeable as to every essential element. Preliminary negotiations or tentative and incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement....
(quoting Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992)).
In Walz, approximately three weeks before the final hearing in a dissolution of marriage case, the parties met at a nightclub and restaurant in order to negotiate a settlement. Id. at 930. They signed a written list dividing the household furnishings, but they did not sign the settlement agreement form the husband had taken notes on during their discussions. Id. The wife asserted that the parties had settled all issues at the meeting, but the husband disputed this in his testimony. Id. at 930-31. The husband testified that the parties had imbibed several beers at this meeting and that he began to respond to the wife’s requests with “okay, okay,” in order not to cause any embarrassment or create a scene. Id. at 930. The trial court found that a binding oral agreement had been reached, but the first district reversed. Id. at 931. The court held that the wife did not meet her burden of establishing assent by the opposing party. Id. The court explained its reasoning as follows:
We note particularly the somewhat coercive surroundings of the parties’ meeting at the Runaway restaurant, leading appellant to say “okay, okay,” to many items; and that they both left the meeting with a written, signed agreement on household and personal items, but no written agreement on the other items.

Id.

Similarly, in this case the wife vehemently contested the terms of the agreement. Her undisputed testimony revealed *320 coercion in that the husband was physically abusive to her. She agreed to quitclaim her interest in the home in order to give him control and stop the abuse. At the same time, she was adamant that this was to permit the parties to reconcile, which they did. The mediator testified that she did not participate in the formation of the agreement and that her role was merely to reduce it to writing. And while the mediator testified to her understanding of the terms of the agreement, she never reduced it to writing which was the reason the parties had contacted the mediator in the first place. Under these circumstances, the parties’ failure to reduce the agreement to writing strongly indicates that the parties had not agreed to everything.
Another reason why the executory provisions of this agreement should not be enforced is because of the parties’ reconciliation after its negotiation. The husband did not dispute the wife’s testimony that they recommenced living as husband and wife until the husband engaged in more domestic violence in 2004. While the parties’ reconciliation would not prevent enforcement of the executed portions of the agreement, it would prevent enforcement of those executory portions. See Cox v. Cox, 659 So.2d 1051 (Fla.1995). The parties’ agreement did not cover all of the marital assets. If the parties continued to live as husband and wife, then, absent an express agreement, the equity in the home was a marital asset, despite the quitclaim of the title to the husband. There was no express agreement made regarding the increase in equity in the marital home after the parties reconciled. Moreover, in this case the wife continued to pay half of the expenses, including mortgage payments, on the home.
The wife also contends that even if she did agree to the settlement agreement, it should be unenforceable because: 1) it was entered into through coercion; 2) the husband failed to disclose all of his assets; and 3) it is unreasonable. In Casto v. Casto, 508 So.2d 330, 333 (Fla.1987), the supreme court set forth the test for determining whether a postnuptial agreement could be deemed unenforceable. First, a spouse may set aside or modify an agreement by establishing that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching. Id. Second, the challenging spouse may have the agreement set aside by establishing that the agreement makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties. Id.
As to the first test, the undisputed testimony of the wife shows that the husband was physically abusive during the marriage, and the wife agreed to quitclaim the home to him to stop the violence and allow him more control. Further, there was evidence that the husband had other assets at his disposal that were not revealed to the wife during the settlement, including an account in the name of his sister from which he withdrew $25,000. There was at least the same degree of coercion in this agreement as the first district found in Walz. Thus, because the coercive circumstances surrounding this settlement agreement were coupled with evidence of concealment of assets, the husband failed to establish mutual assent to all significant portions of the agreement.
“Settlement” agreements entered into between the parties, acting without counsel and without full and fair disclosure of the parties’ assets, should be viewed with skepticism. This is all the more true when the parties enter into an oral settlement agreement years before the divorce, and later reconcile after agreeing to its terms. The purported oral settlement in this case would have deprived the wife of any equitable division of the equity in the *321 home and any additions to the IRA which accrued after the settlement agreement was executed, as well as her interest in undisclosed accounts or savings.
We reverse the final judgment and remand for a new trial on the issue of division of the marital assets and alimony based upon our conclusions that the oral settlement agreement is unenforceable as to its executory portions.
Reversed for a new trial on the equitable distribution of assets and alimony.
GUNTHER and HAZOURI, JJ., concur.