DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CARY PORTNER,**
Appellant,

v.

**GIL KOPPEL** and **ALEKSANDRA KOPPEL,**
Appellees.

No. 4D2023-1017

[March 13, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Maxine Cheesman, Judge; L.T. Case No. 50-2021-CA-013227-XXXX-MB.

Nicole Nicolette Mace and Curt Sanchez of the Law Offices of Curt Sanchez, P.A., West Palm Beach, for appellant.

Mark R. Osherow and Kenyetta N. Alexander of Osherow, PLLC, Boca Raton, for appellees.

LEVINE, J.

Appellant, Cary Portner, appeals a final order enforcing a settlement agreement between appellant and Gil and Aleksandra Koppel, appellees. The parties negotiated the settlement agreement as a result of injuries appellant sustained while at appellees' home. Appellant claimed that there was not, in fact, a settlement agreement since he wanted a "net" settlement of $100,000 instead of the gross settlement of $100,000 negotiated by appellant's former counsel. The trial court granted appellees' motion to enforce the settlement agreement, finding that all the essential terms of the settlement were fully negotiated and agreed to by the parties. We find competent substantial evidence that appellant clearly and unequivocally granted his former counsel authority to settle appellant's claim. Thus, we affirm.

Appellant filed a personal injury action against appellees for injuries sustained while he was at their residence to perform tree trimming services. According to the complaint, appellees' two dogs charged at appellant, causing him to fall and shatter his wrist.

Several months after the filing of the complaint, appellees moved to enforce a settlement agreement, claiming the parties had settled the lawsuit but that appellant had refused to execute the settlement agreement. The matter proceeded to an evidentiary hearing, where appellees presented testimony from their counsel and appellant's former counsel and also introduced multiple exhibits. Appellant presented his own testimony in defense.

Appellees' counsel testified regarding text messages and emails exchanged between himself and appellant's former counsel. The correspondence, which was introduced into evidence, showed that appellees' counsel stated he was authorized to settle for $100,000 and provided appellant's former counsel with a draft settlement agreement, which appellant's former counsel then revised. Appellees' counsel accepted the revisions and forwarded the final settlement agreement to appellant's former counsel. The terms of the settlement included payment of $100,000 from appellees to appellant, a release by appellant, and dismissal of the lawsuit after receipt of payment. Appellees signed a check for $100,000 and executed the settlement agreement.

Appellant testified that he told his former counsel's associate that he would settle for a net amount of $100,000. When the associate informed appellant of a $100,000 offer, appellant testified he was not "clear if it was net." Appellant claimed he did not receive a breakdown until two weeks later. Appellant testified he did not accept the $100,000 gross settlement offer because it came to $45,000 or $55,000 net.

Appellant's former counsel then testified that appellant gave his office authority to settle the case for $100,000. Former counsel further testified: "[Appellant] was aware that the gross settlement was $100,000. We had handled a case for him in the past, and he understands how it works. And specifically discussed gross versus net settlement in a 45-plus minute discussion, giving me authority to resolve the case for $100,000."

Former counsel testified that appellant unambiguously authorized him to settle for $100,000. Former counsel told appellant he was not certain if that would happen because appellees had no insurance and would be paying out of their own funds. Former counsel discussed that appellant would receive an approximate net of $40,000 to $60,000 after attorney's fees and medical bills. Appellant agreed, and former counsel went forward with the settlement.

According to former counsel, appellant fully understood all the facts and gave former counsel's office authority to settle. After the settlement, appellant asked his former counsel to reduce his attorney's fees. When former counsel refused, appellant became irate and took the position that he did not settle the case.

Former counsel thought it was in appellant's best interest to settle the case for $100,000. There were unclear issues in the case, and appellees did not have insurance. Former counsel explained the situation to appellant and why the settlement amount was a good result. Former counsel believed the case was settled. He had no reason to believe appellant did not understand the terms of the settlement. Appellant had full knowledge of all facts relevant to the settlement and did not object until over a month later, after asking former counsel to reduce his attorney's fees.

The trial court entered an order granting the motion to enforce the settlement agreement. The trial court summarized the evidence and found that the documents entered into evidence and the attorneys' testimony demonstrated that the parties agreed to the settlement. Additionally, the trial court found appellant's former counsel's testimony credible. The trial court found that the settlement was both oral and conveyed through written correspondence between the parties' attorneys. The trial court further concluded that the parties negotiated, agreed, and intended to be bound by the settlement agreement, regardless of whether appellant had formally executed the settlement agreement. All essential terms were fully negotiated and agreed to by the parties. The trial court directed appellant to execute the settlement agreement and to dismiss the case with prejudice after receipt of the settlement funds. From this order, appellant appeals.

Settlement agreements are reviewed under the principles of contract law. *Choate v. RySurg, LLC*, 330 So. 3d 936, 940 (Fla. 4th DCA 2021). Issues of contract interpretation and formation are reviewed de novo, while factual findings are reviewed for competent substantial evidence. *Id.* "Accordingly, the issue of whether there was mutual assent is reviewed for competent, substantial evidence, but the overall question of whether there was an enforceable settlement agreement is reviewed de novo." *Evans v. Diaz*, 365 So. 3d 1176, 1178 (Fla. 4th DCA 2023).

The "party seeking to enforce a settlement agreement bears the burden of showing that the attorney proposing the settlement had the clear and unequivocal authority from his client to do so." *Hamilton v. Fla. Power & Light Co.*, 48 So. 3d 170, 171-72 (Fla. 4th DCA 2010). Further, "[t]he trial court's factual findings that there was a clear and unequivocal grant of

authority must be supported by competent, substantial evidence in order to be upheld on appeal." *Id.* at 172. When the trial court is the finder of fact, "the trial judge's findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous." *Bd. of Trs. of Internal Improvement Tr. Fund of State of Fla. v. Waterfront ICW Props., LLC*, 310 So. 3d 939, 940 (Fla. 4th DCA 2021) (citation omitted). Findings of fact are reviewed "for competent substantial evidence." *Id.*

Competent substantial evidence supports the trial court's finding that appellant's former counsel had clear and unequivocal authority from appellant to settle the case for the gross amount of $100,000. The competent substantial evidence included testimony from the former counsel who stated that appellant gave authority to settle the case for $100,000, and appellant was aware that the $100,000 was the gross amount. Appellant and former counsel discussed the difference between a gross settlement and a net settlement during a forty-five-minute conversation. The former counsel discussed with appellant that appellant would receive an approximate net of $40,000 to $60,000 after paying outstanding medical bills and the former counsel's attorney's fees. After the settlement, appellant asked the former counsel to lower his attorney's fees, which the former counsel declined to do. Only then did appellant take the position that when he agreed to settle for $100,000, it was a net settlement and the entire $100,000 would be remitted to appellant.

The trial court weighed the conflicting testimony and specifically found the former counsel's testimony to be credible. The trial court "is in the best position 'to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses.'" *Hamilton*, 48 So. 3d at 172 (quoting *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008)). Although appellant points to his testimony that he told the former counsel's associate that he wanted $100,000 net as evidence that the trial court erred, appellant is essentially asking us to reweigh the evidence. *See id.* This we cannot do.

Further, appellant's testimony belies credibility. Appellant's testimony that he only agreed to settle for $100,000 net would essentially mean that the outstanding medical bills and attorney's fees would either go unpaid or that all professionals were working without compensation. In order for appellant's testimony that he only agreed to a $100,000 net settlement to be plausible, then the gross amount of settlement would have had to have been higher than $100,000, the only settlement number in the record.

Appellant also argues that the trial court improperly shifted the burden of proof to appellant to prove that he did not accept the settlement. In support, he points to the portion of the trial court's order noting the respective evidence presented by the parties. Contrary to appellant's contention, the trial court's finding that appellant did not present any evidence other than his own testimony does not demonstrate that the trial court improperly shifted the burden of proof. Rather, it was simply a recitation of fact. At trial, appellant presented only his own testimony, whereas appellees presented testimony from their attorney and appellant's former attorney and also introduced documentary evidence, including text messages and emails.

Appellant next asserts that the trial court erred in finding the parties entered into an enforceable settlement agreement because the communications between the parties did not establish a meeting of the minds. Settlement agreements are favored by the law and will be enforced whenever possible. *DeJour v. Coral Springs KGB, Inc.*, 293 So. 3d 502, 504 (Fla. 4th DCA 2020). "A trial court's finding that there was a meeting of the minds must be supported by competent substantial evidence." *Id.* (citation omitted).

"To be enforceable, an agreement must be sufficiently specific, and reflect assent by the parties to all essential terms. . . . Where essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract." *Bergman v. DeIulio*, 826 So. 2d 500, 503 (Fla. 4th DCA 2002) (citation omitted). Emails between attorneys can constitute an enforceable settlement agreement. *See Warrior Creek Dev., Inc. v. Cummings*, 56 So. 3d 915 (Fla. 2d DCA 2011).

Competent substantial evidence supports the trial court's findings that the parties agreed to all essential terms and that those terms were incorporated into a final settlement agreement. The correspondence between the parties' attorneys showed that appellees' counsel stated that he was authorized to settle for $100,000 and provided appellant's former counsel with a draft settlement agreement, which former counsel revised. Appellees' counsel accepted the revisions and forwarded the final version to appellant's former counsel. The terms of the settlement included payment of $100,000 from appellees to appellant, a release by appellant, and dismissal of the lawsuit after receipt of payment. No essential terms remained open, subject to future negotiation. At the hearing, both attorneys testified regarding the communications between them and further testified that the case was settled.

The fact that appellant did not sign the settlement agreement is not dispositive in this case. "A settlement agreement does not have to be in writing . . . ." *State Farm Mut. Auto. Ins. Co. v. InterAmerican Car Rental, Inc.*, 781 So. 2d 500, 502 (Fla. 3d DCA 2001). Additionally, a settlement agreement does not need to be signed to be enforceable. *See Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3d DCA 1993) ("[T]he execution of the settlement documents was not a condition precedent to the settlement agreement, but rather a mere procedural formality which both parties to the settlement agreement were obliged to perform."); *Patrick v. Christian Radio*, 745 So. 2d 578, 581 (Fla. 5th DCA 1999) (stating that whether a valid settlement has been reached is not dependent on signing of documents).

Finally, appellant claims that the trial court erred in allowing his former counsel to testify since appellant objected to this waiver of his attorney-client privilege. Appellant acknowledges and admits that the trial court did not issue a ruling before appellant and the former counsel testified. It is clear that "a party must object and obtain a ruling from the trial court in order to preserve an issue for appellate review." *MacDonald v. Dep't of Child. & Fams.*, 855 So. 2d 1270, 1271 (Fla. 4th DCA 2003). Since appellant did not obtain a ruling, this issue is waived for purposes of appeal.

Further, the trial court would not have abused its discretion in permitting the testimony. Section 90.507, Florida Statutes (2022), states:

> A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person . . . voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. . . .

In the present case, appellant testified before his former counsel. As a result of appellant's testimony, in which confidential communications were discussed, appellant waived his attorney-client privilege. *See id.*; *Hamilton v. Hamilton Steel Corp.*, 409 So. 2d 1111, 1114 (Fla. 4th DCA 1982) ("[O]nce the privilege is waived, and the horse out of the barn, it cannot be reinvoked.").

Additionally, appellant would have waived his attorney-client privilege by claiming that his former counsel lacked authority to settle the case on appellant's behalf. "[W]aiver occurs when a party 'raises a claim that will necessarily require proof by way of a privileged communication.'" *Coates*

*v. Akerman, Senterfitt & Eidson, P.A.*, 940 So. 2d 504, 508 (Fla. 2d DCA 2006) (citation and emphasis omitted). Significantly, the attorney-client privilege is waived where the issue is whether the lawyer had the authority to enter into a settlement. *Hamilton*, 409 So. 2d at 1114. "No court should countenance an announced settlement between counsel followed by escape therefrom, if one side arbitrarily reneges and then seals his counsel's lips by invoking the attorney-client privilege." *Id.; see also Marrero v. Rea*, 312 So. 3d 1041, 1050-51 (Fla. 5th DCA 2021) (finding waiver of privilege where issue was whether attorney had authority to settle); *Lender Processing Servs., Inc. v. Arch Ins. Co.*, 183 So. 3d 1052, 1064 (Fla. 1st DCA 2015) (finding waiver of attorney-client privilege where party asserted counsel lacked authority to settle); *Est. of Tobias v. Barnaby*, 804 So. 2d 553, 555 (Fla. 3d DCA 2002) (A party "waive[s] the privilege as a matter of law by making the assertion that [his] counsel had settled the case without authority."); Charles W. Ehrhardt, 1 Fla. Prac., Evidence § 502.8 (2023 ed.) ("Waiver may also be found when issues are injected into the litigation by a party who then seeks to shield material information by asserting the attorney-client privilege.").

In summary, we find the trial court did not err in enforcing the settlement agreement. The record is replete with competent substantial evidence that appellant's former counsel had clear and unequivocal authority to settle the case. Further, the settlement agreement was enforceable, and the trial court did not err in allowing the former counsel to testify about the authority he received from appellant to settle. As such, we affirm.

*Affirmed.*

WARNER and ARTAU, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

7