429 So.2d 771 (1983)
SOUTHERN CRANE RENTALS, INC., Appellant,
v.
CITY OF GAINESVILLE, Appellee.
No. AO-60.
District Court of Appeal of Florida, First District.
April 12, 1983.
*772 Stephen A. Rappenecker of Stephen A. Rappenecker, P.A., Gainesville, for appellant.
Ann Carlin, Asst. City Atty., City of Gainesville, Gainesville, for appellee.
SHIVERS, Judge.
In this contract dispute Southern Crane Rentals, Inc. (Southern Crane) appeals order of final summary judgment entered by trial court in favor of City of Gainesville. Appellant argues, inter alia, that the contract in question is not ambiguous, and therefore, the trial court erred in resorting to custom and usage to create a provision for the parties on a point upon which the contract is silent. We agree, reverse and remand.
The City of Gainesville, defendant below, on August 27, 1980, sent out an invitation to bid, with specifications attached, for the leasing of a 90-ton crane for an approximate three month period. Southern Crane was the successful low bidder at $16,000 per month, and on September 22, 1980, Southern Crane was verbally notified it was awarded the job. Southern Crane made arrangements to begin the work at that time since it was originally anticipated that the construction period would be October 1, 1980, to December 31, 1980. The contract between the parties made no mention of the parties' respective rights in the event that one party desired to cancel the contract. The parties agree that they did not contemplate any cancellation at the time the contract was made and that they formed no intent at that time in regard to the possibility of cancellation.
The purpose of the crane rental was stated to be for setting 100 and 115-foot concrete poles with weights of 20 to 25 tons as required for the construction of a transmission line. Garvin Combs, City Superintendent of Electric Transmission, was project superintendent for the transmission line construction and sole representative of Gainesville in dealing with Southern Crane in connection with the transmission line project. On October 1, 1980, Combs learned of possible delays in the project because of delays in manufacture and delivery of the concrete poles. Combs notified Southern Crane of this problem around the first or second week of October. Southern Crane was told that as soon as the poles arrived, the city would be in touch with them.
On October 23, 1980, Southern Crane was advised to be "available to deliver on November 17, and start setting on the 19th." On November 3 through November 6, 1980, the first five poles were delivered to the site. On November 7, 1980, the city engineering department met and decided to delay the transmission line project for 60 days because the city commission had decided to examine other routes. On November 10, 1980, Southern Crane was advised to hold up delivery for 60 days because of routing problems. On January 5, 1981, Southern Crane contacted the city and was told that problems still existed and there would be further delay. On January 19, 1981, at a public hearing, the city commission made a decision to indefinitely postpone the project until a suitable route was found. Mr. Combs telephoned representatives of Southern Crane and notified them that the job had been "canceled indefinitely." On February 19, 1981, the city formally canceled the contract between it and Southern Crane.
Southern Crane filed suit, charging Gainesville with breach of an executory contract. The city filed a motion for summary judgment on the basis that the absence of any agreement between the parties *773 concerning cancellation rights created a latent ambiguity which required the court to resort to custom and usage to supply the omitted element. The city submitted evidence by affidavit that it was the custom in the crane rental industry to allow unilateral cancellation of crane leases by the lessees. Because this evidence of what constituted custom and usage was uncontroverted, the trial court found no genuine issue as to any material fact and granted summary judgment in favor of the city. This appeal ensued.
Appellee argues that the contract's silence as to cancellation rights creates a latent ambiguity which requires the court to construe the contract in accordance with custom and usage in the local crane industry. We agree that silence can create a latent ambiguity in a contract under certain factual situations. See Hunt v. First National Bank of Tampa, 381 So.2d 1194 (Fla. 2d DCA 1980). We do not think, however, that this is such a case. The laws which exist at the time and place of the making of a contract enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including those laws which affect its construction, validity, enforcement or discharge. Humphreys v. State, 108 Fla. 92, 145 So. 858 (1933); see cases cited at 11 Fla.Jur.2d Contracts § 129 (1979). Furthermore, contracts are made in legal contemplation of the existing applicable law. Carter v. Government Employees Insurance Co., 377 So.2d 242 (Fla. 1st DCA 1979), cert. denied, 389 So.2d 1108 (1980). Since the parties remained silent on the issue of cancellation rights, the law of Florida in regard to cancellation rights is unambiguously annexed to the parties' contract.
The doctrine of anticipatory repudiation is part of the law of contracts in Florida. Where an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for breach. Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181 (Fla. 1982). Whenever, while the contract is still executory, one of the parties directs the other party not to proceed with the performance of the contract, the former has breached the contract and the latter may bring an action for damages. Poinsettia Dairy Products, Inc., v. Wessel Co., 123 Fla. 120, 166 So. 306 (1936); see cases cited at 11 Fla.Jur.2d Contracts § 226 (1979). Against this body of law, appellee asserts that custom and usage in the local crane rental industry allows for unilateral cancellation of contracts by crane lessees, and that such custom and usage should be read into the instant contract. As appellee conceded at oral argument, however, a custom cannot prevail over a legal right. See Wilson v. Jernigan, 57 Fla. 277, 49 So. 44 (1909). Assuming that a custom does exist in the crane rental industry for crane rental companies to allow crane lessees to unilaterally cancel their contracts, we view this merely as a custom to refrain from enforcing a legal right. Such a custom should not be allowed, of its own weight, to destroy that legal right.
Were this court to read a unilateral cancellation provision into this contract by resort to custom and usage, a troublesome question regarding mutuality of remedy would arise. How would the City of Gainesville have viewed this contract had it been prepared to go forward with the construction, and Southern Crane had unilaterally canceled? If the city had been forced to find another crane company to perform the work at a higher cost than agreed upon in the Southern Crane contract, could the city recover damages for breach? We are aware that the concept of mutuality of remedy does not mean that in every case each party must have the same remedy for a breach as the other. Thompson v. Shell Petroleum Corp., 130 Fla. 652, 178 So. 413 (1938).[1] However, if a party desires a provision *774 as important as the right to unilaterally cancel a contract, such a provision must be expressly provided for in the contract. Where a contract is simply silent as to a particular matter, courts should not, under the guise of construction, impose on the parties contractual rights and duties which they themselves omitted. Jacobs v. Petrino, 351 So.2d 1036 (Fla. 4th DCA 1976), cert. denied, 349 So.2d 1231 (1977). To do so would be to make a new contract for the parties, which the court cannot do. Haenal v. United States Fidelity & Guaranty Co., 88 So.2d 888 (Fla. 1956).
Even if the alleged custom of unilateral cancellation were held to be annexed to the contract and superior to the parties' right to sue for anticipatory repudiation, summary judgment in favor of appellee was still error. The affidavits relied upon by the trial court reflect that, although it was the custom not to demand the full contract price in cases of unilateral cancellation, it was also the custom for the cancelling customer to reimburse the crane company for actual costs incurred. The pleadings reveal that Southern Crane is claiming, inter alia, just such costs.[2]
Accordingly, the order of final summary judgment is reversed and the cause remanded for further proceedings. REVERSED and REMANDED.
WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] But see Miami Coca-Cola Bottling Co. v. Orange-Crush Co., 291 F. 102 (S.D.Fla. 1923), aff'd., 296 F. 693 (5th Cir.1924) (holding that a contract which gives only one party unilateral termination rights is void and unenforceable due to lack of mutuality).
[2] We express no opinion as to the proper measure of damages should appellant prevail upon remand.