474 So.2d 363 (1985)
STATE of Florida, DEPARTMENT OF NATURAL RESOURCES; and Elton J. Gissendanner, As Executive Director of the Department of Natural Resources, Appellants,
v.
SUNSET REALTY CORPORATION, Sunset Mainland Corporation, Sands, Inc., Sunset Gulf Corporation, and Boca Grande Club, Inc., All Florida Corporation, Appellees.
No. BD-389.
District Court of Appeal of Florida, First District.
August 9, 1985.
*364 Andrew S. Grayson, Asst. General Counsel, Dept. of Natural Resources, Tallahassee, for appellants.
Carlos Alvarez and Carolyn S. Raepple of Hopping, Boyd, Green & Sams, Tallahassee, for appellees.
JOANOS, Judge.
The Department of Natural Resources (DNR) has appealed from a final order granting partial summary judgment to Sunset Realty Corporation (Sunset), in Sunset's suit against DNR. (Sunset Realty Corporation is the predecessor in title of all the entities named as appellees in this suit.) Sunset had sought specific performance of a 1978 settlement agreement entered into between the parties. Sunset has cross-appealed that portion of the final order in which the trial court determined the settlement agreement has a 10-year duration. The questions before us are (1) whether the trial court erred in entering partial summary judgment in favor of Sunset, and (2) whether the trial court erred in determining that the settlement agreement was for a 10-year duration. We reverse.
This case had its genesis in DNR's 1977 rulemaking initiative wherein DNR established a coastal construction setback line in Charlotte County, pursuant to Section 161.053, Florida Statutes (1975). The statute provided in part that:
Setback lines established under the provisions of this section shall be subject to review by the department at 5-year intervals from time of establishment or at the written request of officials of affected counties or municipalities. (emphasis supplied).
*365 Sunset challenged the location of the setback line on its Gasparilla Island property in Sunset Realty Corporation v. Reubin O'D. Askew, et al., Case No. 77-464 (Fla. 2d DCA, filed March 15, 1977). DNR responded by filing, in the Florida Supreme Court, a suggestion for a writ of prohibition concerning Sunset's petition for review. Then, on February 20, 1978, Sunset and DNR executed a settlement agreement which the parties agreed "constitute[d] a full settlement of all issues, grievances, and rights alleged in the litigation previously referenced."
The purpose statement of the settlement agreement expresses the desire of Sunset and DNR "to establish a coastal construction setback line that will further the aims of Chapter 161, Florida Statutes, and specifically that will protect upland properties and control beach erosion consistent with private property rights." The agreement provided for a regulated coastal zone on Gasparilla Island wherein certain minimum construction standards would apply. Following a recitation of the minimum construction standards applicable to the regulated coastal zone, the agreement expressly provides:
(4) Only minor structures, including but not limited to, pile supported wooden, elevated dune overwalks, viewing platforms, beach huts and gazebos, may be constructed gulfward of the established coastal construction setback line and only then after complying with the provisions of Chapters 161.053, Florida Statutes. (emphasis supplied).
Paragraph (5) of the agreement required Sunset to incorporate the minimum construction standards set forth in the agreement in deed restrictions, "recorded in the official records of Charlotte County," with the express provision that the deed restrictions "may be enforced by the Department of Natural Resources, Bureau of Beaches and Shores."
In 1978 the terminology of the statute changed the phrase "coastal construction setback line" to "coastal construction control lines." (CCCL). Ch. 78-257, § 5, Laws of Florida. The statute was further amended in 1980 when the 5-year mandatory review by DNR was changed to provide for "review at the discretion of the department after consideration of hydrographic and topographic data." Ch. 80-183, § 3, Laws of Fla.; § 161.053, Fla. Stat. (1981).
In 1984 DNR initiated rulemaking proceedings to establish a new CCCL for Charlotte County. The new CCCL proposed by DNR is landward of the coastal construction setback line established in the 1978 settlement agreement, thus it affects more of Sunset's property.
Following DNR's rulemaking initiative, Sunset filed a complaint seeking declaratory judgment alleging that DNR "has recently demonstrated its intention to breach the Settlement Agreement (S/A) and it is attempting to unilaterally amend and modify the terms and conditions contained in that agreement." In Count I of the complaint, Sunset sought specific performance of the settlement agreement; in Count II, Sunset sought a declaration that the settlement agreement constitutes a waiver or variance; and in Count III, Sunset sought an order holding that DNR is equitably estopped from nullifying or modifying the settlement agreement. In its answer and affirmative defenses, DNR asserted as a defense that the settlement agreement at issue was based upon Section 161.053, Florida Statutes (1975), which required DNR to establish coastal construction setback lines and to review the lines every five years. DNR noted the 1983 change in the law, which provides for review at DNR's discretion, after consideration of shoreline changes or upon the written request of affected counties or municipalities. After studying such shoreline changes, DNR had designated Charlotte County as a priority county for reestablishment of the CCCL. DNR alleged that Sunset had actual notice of the 5-year time period for review and possible reestablishment of the CCCL, due to the reference in the settlement agreement to Section 161.053, Florida Statutes (1975)  which expressly mandated the 5-year restudy.
*366 In 1984, at the request of the governor and cabinet, DNR prepared a document entitled  "Coastal Construction Control Line Restudy/Reestablishment Process, pursuant to Section 161.053, Florida Statutes  Status Overview." This status report designated Charlotte County a high priority area, and rated the adequacy of its existing control line as "critical." DNR personnel rate the adequacy of a control line in terms of its effectiveness in beach dune preservation as well as its effectiveness in preservation of the adjacent property. Of the 24 counties reviewed in the Status Overview, only Charlotte County received a "critical" designation with regard to the effectiveness of its existing control lines.
Both Sunset and DNR filed motions for partial summary judgment. DNR's position was that the settlement agreement entered into between the parties expressly states the terms of the agreement were to operate in compliance with the provisions of Chapter 161.053, Florida Statutes  which mandated a review of the control lines every five years. Sunset's position was that the 1978 settlement agreement did not provide for duration of the contract, therefore the agreement should be construed as in effect for a "reasonable time," i.e., the 15 to 20 year build-out period contemplated by Sunset. The trial court entered final partial summary judgment in favor of Sunset, finding the 1978 settlement agreement a valid, enforceable contract effective for ten years from the date of its execution. The trial court further found that DNR had "waived its regulatory jurisdiction pursuant to Section 161.053, Florida Statutes (1977), to the extent it is inconsistent with the Settlement Agreement." DNR appealed, and Sunset cross-appealed.
We note at the outset that the parties agreed the settlement agreement was binding. The parties differ only in their respective views concerning the duration of the settlement agreement. Sunset takes the position that since there was not an express time period specified in the agreement, the trial court was required to consider all the facts and circumstances attendant upon the agreement  and determine a "reasonable time" for its duration. This reasonable time, according to Sunset, is the build-out period contemplated by Sunset at the time of execution of the agreement, i.e., 15 to 20 years from the date of the execution of the agreement. DNR, on the other hand, contends the settlement agreement expressly stated that construction governed by the agreement could only be performed "after complying with the provisions of Chapter 161.053, Florida Statutes," and the Chapter 161.053 reference provides the only expression regarding duration. Therefore, DNR maintains it was entitled to summary judgment, because the parties expressly agreed the agreement bound both parties to comply with the provisions of Chapter 161. We agree with the position taken by DNR, for the following reasons.
First, it is fundamental that "contracts are made in legal contemplation of the existing applicable law [in that] ... laws which exist at the time and place of the making of a contract enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including those laws which affect its construction, validity, enforcement, or discharge." Southern Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771, 773 (Fla. 1st DCA 1983), and cases cited therein. When the parties executed the settlement agreement here at issue, they expressly agreed that the contemplated building program would be in compliance with the provisions of Chapter 161. This legislation was termed the Beaches and Shores Preservation Act, and provided for a mandatory 5-year review of the coastal construction setback lines.
Second, we reject the suggestion that DNR, by entering into the agreement with Sunset, waived its regulatory powers for the effective period of the agreement. The provisions applicable to the 1978 settlement agreement, which govern DNR's authority *367 to grant a waiver or variance, are set forth in Section 161.053(2), Florida Statutes (1977)[1] and Florida Administrative Code Rule 16B-25.05 (1975).[2] A reading of *368 the controlling statute demonstrates that DNR was empowered to waive compliance with the setback requirement only in certain narrowly defined circumstances, and only after the party seeking such waiver or variance filed an application with DNR pursuant to the applicable rules. The rules provided that "[u]nless otherwise specified, the time limits on variances shall be six (6) months for initiation of construction with completion with [sic] eighteen (18) months." Fla. Admin. Code Rule 16B-25.09 (1975).
DNR's discretion to grant a waiver of its regulatory responsibilities is circumscribed also by "this state's adherence to the doctrine of non-delegation of legislative power, pursuant to article II, section 3, Florida Constitution." Microtel, Inc. v. Florida Public Service Commission, 464 So.2d 1189, 1191 (Fla. 1985). In Askew v. Cross Key Waterways, 372 So.2d 913, 925 (Fla. 1978), the Florida Supreme Court, in construing the non-delegation doctrine, said:
Under this doctrine fundamental and primary policy decisions shall be made by members of the legislature who are elected to perform those tasks, and administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program.
In the instant case, the legislature enacted the Beaches and Shores Preservation Act as an expression of its "fundamental and primary policy decision" that measures must be taken to safeguard the state's coastline. Pursuant to this policy decision, the legislature directed DNR to "establish coastal construction setback lines on a county basis along the sand beaches of the state fronting on the Atlantic Ocean and the Gulf of Mexico," and to review those setback lines "at 5-year intervals from time of establishment or at the written request of officials of affected counties or municipalities." § 161.053(1), Fla. Stat. (1977). Were we to adopt Sunset's construction of the settlement agreement, we would be attributing to DNR the authority "to exercise unrestricted discretion in applying the law." Florida Welding & Erection Service, Inc. v. American Mutual Insurance Company of Boston, 285 So.2d 386, 388 (Fla. 1973). This we cannot do, just as DNR is not empowered to waive its Chapter 161 regulatory responsibilities for a 15-20 year period.
By the same token, just as DNR is prohibited from exercising unrestricted discretion in applying the provisions of Section 161.053, DNR is also bound to comply with its own rules and policies. See: Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Fredericks v. School Board of Monroe County, 307 So.2d 463 (Fla. 3rd DCA 1975). Where, as in the instant case, "a statute commands that its provisions can only be met by following a specific method, and the evidence reveals that its requirements were not observed, summary judgment is appropriately entered because the controversy is considered one of law, and not one involving a disputed issue of material fact." Travelers Insurance Company v. Spencer, 397 So.2d 358, 360 (Fla. 1st DCA 1981). In the instant case, Sunset did not file a formal application for a waiver or variance, pursuant to Section 161.053(2), Florida Statutes (1977) and Florida Administrative Code Rule 16B-25.05. And under the controlling statutory scheme, DNR could not have contracted to provide Sunset with the time frame to which Sunset claims entitlement. The settlement agreement executed by the parties stated expressly that construction "gulfward of the established coastal construction setback line" must be in compliance with the provisions of Section 161.053. Thus, the express provisions of the applicable law, the language of the contract, and the circumstances surrounding negotiation of the settlement agreement, *369 all preclude the result advanced by Sunset. The record does not support a finding that DNR waived its regulatory jurisdiction for a period of ten years, nor could it have done so under applicable law.
Therefore, the trial court's order granting partial summary judgment in favor of Sunset is reversed and remanded with directions to enter partial summary judgment in favor of DNR.
ERVIN and SHIVERS, JJ., concur.
NOTES
[1] § 161.053(2), Fla. Stat. (1977), provides:

(2) A waiver or variance of the setback requirements may be authorized by the department in the following circumstances:
(a) The department may authorize an excavation or erection of a structure at any riparian coastal location as described in subsection (1) upon receipt of an application from a riparian owner and upon the consideration of facts and circumstances, including adequate engineering data concerning shoreline stability and storm tides related to shoreline topography, which, in the opinion of the department, clearly justify such a waiver or variance.
(b) If in the immediate contiguous or adjacent area a number of existing structures have established a reasonably continuous and uniform construction line closer to the line of mean high water than the foregoing, and if said existing structures have not been unduly affected by erosion, a proposed structure may be permitted along such line on written authorization from the department if such proposed structure is also approved by the department. However, the department shall not contravene setback requirements established by a county or municipality which are equal to, or more strict than, those setback reuirements provided herein.
(c) The department may authorize the construction of pipelines or piers extending outward from the shoreline, unless it determines that the construction of such projects would cause erosion of the beach in the area of such structures.
[2] Fla. Admin. Code Rule 16B-25.05 (1975), provides:

16B-25.05 Procedure to obtain variance; application.
(1) Any person desiring to obtain a variance from the Department shall submit an application to the Bureau of Beaches and Shores, Florida Department of Natural Resources, Tallahassee, Florida 32304, which shall contain the following information:
(a) Name, address, and telephone number of the applicant or his duly authorized agent.
(b) The applicant shall provide the Department with evidence of his ownership and legal description of the property for which the variance is requested. If the applicant is not the property owner, the applicant shall provide the Department with a duly executed statement from the owner of record consenting to the work activity, or construction for which the variance has been requested.
(c) A statement that the proposed work or activity does not violate any local setback ordinances.
(d) Statements describing the proposed work or activity and specific reasons why the applicant feels that the variance should be granted.
(e) The application shall be accompanied by a recent topographic survey of the property in question, certified by a land surveyor or engineer registered in the State of Florida and showing the following information:
1. The approximate location and the elevation of the mean high water line on the subject property.
2. The location of the setback line for the full width of the subject property.
3. Plot plan of existing structures and the proposed construction or activity showing the significant distances from the proposed construction or activity to the setback line.
4. If the variance is requested under the provisions of Section 161.052(2)(b), Florida Statutes, or Section 161.053(2)(b), Florida Statutes, the survey shall show the existing structures that are considered to have established the construction line.
5. Variances requested under the provisions of Section 161.053, Florida Statutes, shall specify the distance and direction from the property in question to the nearest setback line permanent reference monument and the number of that monument.
(2) Variance requests which involve proposed construction shall be accompanied by construction plans which provide at least, but are not limited to the following information:
(a) Cross sections of all sub-grade construction or excavation with elevations referenced to National Geodetic Vertical Datum.
(b) Elevations of the lowest floor and the first dwelling floor.
(c) Details and justification for any proposed waste water discharge onto, over, under or across the beach and/or dunes, including but not limited to storm water runoff, swimming pool drainage or air conditioner cooling water discharge.
(D) [*]
(3) For those counties in which a setback line has been established, under the provisions of Section 161.053, Florida Statutes, there is on file with the Department storm tide data and some data on shoreline stability. For most projects, these data will be sufficient to satisfy the requirements of Section 161.053(2)(a), Florida Statutes, for such data and such data need not be filed by the applicant. Should the applicant have additional data which he wishes to file, it will be evaluated. On the more complex projects for which variances are requested, additional storm tide and shoreline stability data may be required.
(4) The Department may require such additional information as is necessary for proper evaluation of an application.
(5) The Department may waive any of the above requirements if in the opinion of the Department such information is not necessary for a proper evaluation of the proposed work or activity. General Authority 161.052, 161.053, 370.021 FS. Law Implemented 161.052, 161.053, 370.021(1) FS. History-New 7-13-75.
[*] Subsection (2)(d) is a repeat of Subsection (2)(c), and is therefore not reproduced here.