933 So.2d 553 (2006)
Roberto CALDERON, Appellant,
v.
J.B. NURSERIES, INC. and United Self Insured Services, Appellees.
No. 1D04-5320.
District Court of Appeal of Florida, First District.
February 6, 2006.
Rehearing Denied March 15, 2006.
*554 Monte R. Shoemaker, Esquire and Kellye A. Shoemaker, Esquire, Altamonte Springs, for Appellant.
James B. Birmingham, Esquire and Christopher A. Thorne, Esquire of George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Orlando, for Appellees.
PER CURIAM.
The judge of compensation claims found that the parties intended to settle appellant's claim by the agreement they reached in mediation convened for that purpose. We are bound by that finding. See United States Casualty Co. v. Maryland Casualty Co., 55 So.2d 741, 745 (Fla.1951) ("We are of the opinion the `substantial evidence' rule should be invoked in all cases. . . . [F]indings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them.").
That the claimant later refused to sign releases even though, represented by counsel, he had agreed in writing to execute "any releases E/C may require," made the agreement voidable at the other parties' election, but not void. Appellant could not escape the binding effect of the settlement agreement by breaching his obligation to execute a release. The employer and carrier were within their rights simply to overlook his breach, and insist on the other benefits of the bargain they struck in the settlement agreement.
AFFIRMED.
DAVIS and BENTON, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, J., dissenting.
This is an appeal from a final workers' compensation order enforcing a mediation agreement for settlement of the entire case in the amount of $7,500, subject to an attorney's fee in the sum of $1,375, and a cash advance to claimant/appellant Roberto Calderon in the amount of $1,000. Because, in my judgment, the agreement was not sufficiently specific and mutually agreeable as to every essential element, i.e., the execution of a release, as explicitly required by the agreement, I respectfully dissent from the majority's affirmance of the order approving the agreement.
The agreement signed by the parties and their attorneys provided as follows:
Agreement: Parties desire to settle the employee/claimant's workers' compensation case pursuant to section 440.20(11) Florida Statutes. The employer/carrier agrees to pay and the claimant agrees to accept the sum of $7,500.00 inclusive of a statutory guideline fee of $1,375.00.
The sum to be paid by the E/C represents consideration for the settlement of all workers' compensation claims or petitions, past, pending, and future with this employer with regard to the industrial accident(s) referenced above.

Settlement is not complete and payment of the settlement amount mentioned above is not due until claimant has approved and executed any releases E/C may require. After execution of said settlement documents, payment is to be *555 made within 14 days following the E/C attorney's receipt of judicial approval of the attorney's fee and child support information. Such payment constitutes complete satisfaction of the employer/carrier's obligation for all workers' compensation benefits of any type or class, including, but not limited to, past and future indemnity and medical benefits for any injuries or conditions arising out of (or asserted to have arisen from) the industrial accident(s) referenced above.
(Emphasis added.)
In this case, the specific question for the JCC's determination was whether the contract provision stating that "[s]ettlement is not complete and payment of the settlement amount mentioned above is not due until claimant has approved and executed any releases E/C may require," was an essential term of the agreement. In my opinion, the above language was an essential condition for the agreement's finalization, and there is no evidence in the record supporting the judge's finding that the agreement was binding on the parties at the time it was signed by them "and [that it] did not require the provision of subsequent settlement documents to be prepared and signed by claimant and claimant's counsel to be binding on the parties."
After claimant signed the washout agreement and accepted a cash advance of $1,000 from the total sum yet to be paid, he consulted Laura Caballero, also known as Sister Mary of the Trinity, who characterized claimant as extremely uneducated, a person who could speak very little English and could not even read well in Spanish. Sister Mary explained to claimant that the contract did not include any provision for continuing medical treatment as claimant had believed. She advised him to return the $1,000 advance and to reject the agreement. Claimant's attempt to return the amount of the check, which he had cashed, was rejected by the employer/carrier (E/C), which then forwarded to claimant's counsel the releases and the remainder of the money it was required to pay under the terms of the agreement, and it thereafter moved to enforce the agreement.
At the hearing on the motion, the attorney representing claimant testified he did not believe that the mediation agreement would be binding until claimant signed additional settlement documents that would be forwarded to him by the E/C's counsel. He said he urged claimant to sign the agreement in order for him to receive a cash advance of $1,000,[1] which claimant desperately needed, based on the attorney's belief that the agreement had no binding effect. Claimant testified through an interpreter that he believed that he was settling his claims against the employer in exchange for $7,500 and "medical attention." He also stated that he signed the agreement because his former attorney had pressured him to do so.
The mediator who presided at the mediation proceeding testified it was her belief the parties had reached a full and final resolution of the claim at the time that the agreement was signed, notwithstanding the fact that the mediator does not speak Spanish; the claimant does not speak English, and required the use of an interpreter during mediation.
In finding that the agreement did not require the signing of a subsequent release by claimant, the judge apparently accepted *556 the E/C's argument conditioning claimant's execution of "any releases E/C may require," as allowing the E/C the discretion to require or not require settlement documents to be provided to the claimant for the purpose of effectuating the mediation agreement. The JCC's order, however, entirely ignores or overlooks the fact that the E/C attempted to implement such option by providing to claimant the post-mediation agreement documents, which the claimant refused to sign. In my judgment, the execution of the release was an essential element of the contract and, without such element's satisfaction, there simply could be no determination that a meeting of the minds had been accomplished.
The rule applied in Grimsley v. Inverrary Resort Hotel, Ltd., 748 So.2d 299 (Fla. 4th DCA 1999), is in my opinion highly persuasive as to a proper outcome of the present case. There the Fourth District addressed the issue of releases in a suit to enforce a settlement agreement between appellant Grimsley and a condominium resort. The parties negotiated the amount the resort would pay as damages for settlement of Grimsley's breach of contract and wrongful ejection claims, but Grimsley refused to sign a general release absolving all members of the resort's law firm from further liability. The resort and its law firm took the position that the releases absolved them from all liability. The trial court granted Inverrary's motion for enforcement of the agreement, for sanctions, and for involuntary dismissal. On appeal, the court found Grimsley clearly did not intend to be bound by the settlement agreement, noting that Grimsley stated he had settled the case only as to counts alleging breach of contract and wrongful ejectment, but did not accept the general releases set forth by Inverrary. Id. at 301. The court quoted Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992), for the proposition that an agreement "`must be sufficiently specific and mutually agreeable as to every essential element,'" and because there was no agreement between Grimsley and Inverrary as to the releases, it reversed the trial court's order enforcing settlement. Grimsley, 748 So.2d at 301. See also Schlosser v. Perez, 832 So.2d 179, 183 (Fla. 2d DCA 2002) (holding that the trial court erred in finding the settlement agreement enforceable, because Perez's acceptance was not identical to the essential terms of the offer).
In my opinion, the judge's reliance on parol evidence for the purpose of construing the intent of the parties was erroneous. It is well settled that settlement agreements are interpreted and governed by the law of contracts. See Williams v. Ingram, 605 So.2d 890 (Fla. 1st DCA 1992); Schlosser v. Perez, 832 So.2d 179, 182 (Fla. 2d DCA 2002) (citing Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985)). The basic rule of contract interpretation is that the intention of the parties is to be determined from a consideration of the whole agreement. See Grimsley, 748 So.2d at 301. The construction of a written contract is, moreover, a matter of law. Therefore, our review standard over the lower tribunal's construction of the contract is de novo. See Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So.2d 627 (Fla. 1st DCA 1999).
Because a trial court occupies no better position than an appellate court in interpreting the terms of a contract, a reviewing court need give no deference to the lower court's construction. As stated, the intention of the parties to a contract must be ascertained from consideration of the entire agreement. On its face, the agreement clearly shows that payment of the entire sum of $7,500 was conditioned upon the claimant's approval and execution of any releases which the E/C might require. *557 Both parties clearly understood the effect of such terms. The E/C acted in reliance on such language by forwarding the releases to claimant, and the claimant, after being advised that the agreement did not include any reference to continuing medical care, refused to act in compliance with the condition that he execute them. The clearly established rule is that an agreement cannot be determined final where the record establishes it to be the intent of the parties that further action be taken before a binding agreement is considered completed. Williams, 605 So.2d at 893.
Because there was no meeting of the parties' minds as to an essential term, i.e., whether the mediation agreement was an enforceable final agreement, I would reverse the enforcement order and remand the case for further proceedings consistent with this dissent.
NOTES
[1] The fact that claimant accepted and cashed the check for the advance is not evidence of an agreement to settle because section 440.20(12)(c), Florida Statutes, permits claimants to receive advances up to $2,000, if they are found to be in the claimant's best interests. See Workers of Fla. v. Williams, 743 So.2d 609 (Fla. 1st DCA 1999).