991 So.2d 902 (2008)
Robert BONAGURA, Appellant,
v.
HOME DEPOT and Sedgwick, Appellees.
No. 1D07-3566.
District Court of Appeal of Florida, First District.
July 21, 2008.
*903 Mark L. Zientz of the Law Offices of Mark L. Zientz, P.A., Miami, for Appellant.
Brian B. Bolton and Brian T. Hanley, Winter Park, for Appellees.
BROWNING, C.J.
Robert Bonagura (Claimant) appeals a final order of the Judge of Compensation Claims (JCC) that denied and dismissed his petition for benefits and ordered the parties to exchange and execute "the necessary paperwork" to memorialize their *904 oral settlement agreement. We affirm the JCC's order denying and dismissing Claimant's petitions for benefits and remand with directions to the JCC to order the parties to redraft a written settlement agreement according to the limited scope of their prior oral settlement agreement.
Claimant suffered a compensable back injury on February 7, 2002, while working for the employer/servicing agent (E/SA), Home Depot. The parties mediated Claimant's petition for benefits and reached a settlement providing for Claimant to receive $50,000.00 for compensation benefits (with a $2,000.00 advance) and $5,750.00, for attorney's fees. Both parties attempted to renounce the mediated settlement agreement: E/SA insisted on a complete release of all of Claimant's claims and Claimant sought complete release from the agreement. This led to Claimant's filing additional petitions for benefits and E/SA's seeking enforcement of the settlement agreement. The JCC denied Claimant's petitions for benefits and ordered the parties to comply with the settlement agreement. Such order required that Claimant sign a general release, a condition not agreed to by Claimant. Claimant timely appealed.
Settlement agreements are highly favored and must be enforced wherever possible. See Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985). It is well-settled that the JCC has jurisdiction to construe a settlement agreement. See Jacobsen v. Ross Stores, 882 So.2d 431, 433 (Fla. 1st DCA 2004). The JCC is authorized to determine whether a valid, binding settlement agreement was reached and, if so, to establish its terms. See Chubb Group Ins. Co. v. Easthagen, 889 So.2d 112, 112 (Fla. 1st DCA 2004). The JCC's resolution of issues of law is reviewed de novo. See Amato v. Winn Dixie Stores, 810 So.2d 979, 981 (Fla. 1st DCA 2002). The existence of a settlement agreement is a fact question within the JCC's discretion. See Calderon v. J.B. Nurseries, Inc., 933 So.2d 553, 554 (Fla. 1st DCA 2006). The JCC's findings of fact are reviewed to determine whether competent, substantial evidence supports them. See Swanigan v. Dobbs House, 442 So.2d 1026, 1027 (Fla. 1st DCA 1983). The JCC's finding that the parties intended to reach an enforceable settlement agreement is binding on this court, so long as competent substantial evidence supports the finding. See Calderon, 933 So.2d at 554. The JCC's findings must be upheld if any view of the evidence and its permissible inferences supports them. See Ullman v. City of Tampa Parks Dep't, 625 So.2d 868, 873 (Fla. 1st DCA 1993).
The unrefuted evidence in the record demonstrates that the partieswho were both represented by counsel authorized to enter and conclude settlement negotiationsreached a valid, binding oral settlement agreement on July 27, 2006, without contingencies. The sole terms of the agreement were the $50,000.00 payment to Claimant (with a $2,000.00 advance) and the statutory guideline attorney's fee. The JCC required the parties to exchange and execute "the necessary paperwork to comply with this Order."
"In Florida, settlement agreements are governed by the law of contracts." Nichols v. Hartford Ins. Co. of the Midwest, 834 So.2d 217, 219 (Fla. 1st DCA 2002). "[W]hether an agreement constitutes a valid contract is a matter of law subject to de novo review." Munroe v. U.S. Food Serv., 985 So.2d 654 (Fla. 1st DCA 2008). Applying the law of contracts, the JCC, as the fact-finder, had to determine *905 whether a valid, binding settlement agreement was reached. See id. Having done so, the JCC also had to determine what were the terms of the settlement agreement. It is clear from both attorneys' testimony that the paperwork sent to Claimant after the negotiations includes material matters that were not discussed and agreed upon during the oral settlement talks. It is undisputed that the attorneys did not orally discuss a release agreement. Even so, the "Settlement Agreement and General Release" and the "Release of All Claims and Affidavit" were included in the written settlement documents sent to Claimant to review and sign, which he declined to do.
The "Release of All Claims and Affidavit" contains a very broad release of E/SA from any and all actions and claims arising from the industrial accident, including:
any further liability for past or future compensation benefits, past and future medical benefits, rehabilitation benefits, temporary total disability benefits for training and education, death benefits, attorney's fees and costs, and any other benefits provided under the Florida Workers' Compensation Law.
Because no release was negotiated and settled, this release is not a part of the parties' settlement or "necessary paperwork" to be executed. See Nichols, 834 So.2d at 220.
The written "Settlement Agreement and General Release" includes the following provision:
WHEREAS, claimant acknowledges that he has received at least twenty-one (21) days to decide whether or not to sign this Release and that he was advised and encouraged to review this document with an attorney of his choice....
Again, this written language directly conflicts with the unrefuted testimony of both lawyers that an oral agreement was reached on specific terms, and no release was discussed during the negotiations. Thus, this release is not a part of the settlement, as no meeting of the minds was reached on this subject.
Claimant contends that the written paperwork constituted a counter-offer. This is not so, for there was already a valid offer and acceptance. Instead, the additional language in the written documents is in the nature of a new offer to settle additional matters, to the extent that it exceeded the scope of the oral settlement terms. This new offer did not have to be accepted, and Claimant did not do so.
We affirm the JCC's findings that the parties reached a valid, binding oral settlement agreement, under which Claimant was paid $50,000.00 and received an advance, and his attorney received the statutory guideline fee. The fact that Claimant subsequently refused to sign the written documents did not nullify the more limited terms of the binding oral settlement agreement to which he had agreed, through counsel. See Calderon, 933 So.2d at 554. As no other matters were discussed during the oral settlement negotiations and Claimant did not sign the broader written documents, he is not required by law to execute any document significantly broadening the scope of the settlement beyond the payout and the attorney's fee, where there was no meeting of the minds regarding the additional terms. We affirm the final order dismissing the petitions, subject to certain clarifications, and remand with directions to the JCC to order the parties to redraft a written settlement agreement according to the limited scope of their oral agreement.
*906 The final order is AFFIRMED, with clarifications, and REMANDED to the JCC with instructions.
ALLEN and BENTON, JJ., concur.