PER CURIAM.
Claimant challenges the Judge of Compensation Claims’ (JCC) order enforcing the parties’ agreement to settle Claimant’s case for $17,500, inclusive of attorney’s fees and costs, arguing the essential terms of the agreement were not reached. We affirm.
Claimant’s accident occurred on December 21, 1999. Claimant hired Richard Zal-divar as his attorney and filed a petition for benefits (PFB) in 2004. In response, the Employer/Carrier (E/C) denied all benefits based on the expiration of the statute of limitations. The E/C never rescinded their denial and no benefits were paid to Claimant.
The record indicates that during settlement negotiations, Zaldivar made an offer to settle the claim for $17,500, inclusive of fees and costs. The E/C accepted the offer.
After the parties reached settlement, Zaldivar provided a “breakdown” of the settlement funds to the E/C. He requested that the E/C create documents indicating a settlement of $11,750, with a $10,000 payment to Claimant (of which $1,750 was to be designated as a “statutory” fee), along with a separate stipulation for fees paid by the E/C in the amount of $5,750. At no time prior to reaching the settlement agreement of $17,500, inclusive of fees and costs, did Zaldivar discuss a separate stipulation for fees to be paid by the E/C.
Because Zaldivar did not secure any benefits for his client (the sole legal basis for a fee payable by the E/C), the E/C did not agree to draft documents in the manner requested. Zaldivar then requested that the E/C rescind their statute of limitations defense so as to give the appearance that he obtained “benefits” and provide justification for a fee payable to him by the E/C. The adjuster refused and sent the $17,500 to Zaldivar, indicating he was free to reach an agreement with his client for the fees he desired.
The E/C filed a motion to enforce the settlement agreement and the JCC held two hearings on this motion. Zaldivar did not attend the initial hearing due to a family medical issue. The JCC continued the hearing to ensure Zaldivar’s personal appearance. The JCC entered an order continuing the hearing and requiring Zal-divar’s personal appearance at the next hearing.
Zaldivar did not attend the continued hearing held nearly 90 days later and instead sent an associate who informed the JCC that, due to medical reasons, it was impossible for Zaldivar to appear in person. The JCC called Zaldivar and left a message informing him the hearing would be rescheduled when he could personally attend. The JCC received a return message from Zaldivar that “he didn’t care what the judge was going to do regarding the hearing.” Based on this course of conduct, the hearing proceeded without any evidence being introduced opposing the E/C’s assertion that the parties entered into an agreement settling the claim, inclusive of attorney’s fees and costs, for $17,500. At the conclusion of the hearing, *676 the JCC found that the parties entered into an agreement to settle the entire claim for $17,500, inclusive of attorney’s fees and costs, and that the issues raised by Claimant’s counsel did not address whether there was a binding settlement, but rather addressed whether there was a basis for Zaldivar to obtain an attorney’s fee in excess of the statutory guidelines. The JCC enforced the agreement and dismissed Claimant’s case with prejudice.
On appeal, Zaldivar concedes the fact that the parties reached an agreement to settle the case for a gross sum of $17,500, inclusive of fees and costs, but argues that the parties did not have a meeting of the minds as to the “essential terms” of the agreement because the E/C, after reaching such an agreement, refused to restructure the settlement in a manner that would deny Claimant monies to which he might be entitled. Zaldivar contends that the fact that the settlement was negotiated for $17,500, inclusive of fees and costs, should not control the outcome of this case because it is common practice to negotiate “all inclusive” settlements and, once the dollar amount is agreed upon, to determine a breakdown after the fact.
The definition of “essential term” varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis. Nichols v. The Hartford Ins. Co. of the Midwest, 834 So.2d 217 (Fla. 1st DCA 2003). Contracts are made in legal contemplation of the existing applicable law. Carter v. Gov’t Employees Ins. Co., 377 So.2d 242 (Fla. 1st DCA 1979); see also S. Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771 (Fla. 1st DCA 1983) (explaining where parties’ contract was silent as to right to anticipatory repudiation, governing law, rather than trade custom, controlled available remedy).
Here, at the time the settlement agreement was reached, Claimant was responsible for paying his attorney’s fees and costs and Claimant’s demand for settlement was for a sum certain, inclusive of fees and costs. Once these terms were established, under no interpretation of the agreement would the E/C have to pay an amount greater than $17,500 to fully settle all claims whether raised by Claimant or his attorney. Consequently, the issue as to the amount of Zaldivar’s fee (which he failed to include as an initial term of settlement) would be an issue in which the E/C had no contractual interest. Rather, it would be an issue between Claimant’s counsel and Claimant (and ultimately the JCC). Thus, the amount of Zaldivar’s fee was a non-essential term of the agreement. The parties, having reached an agreement to settle the case inclusive of fees and costs for a sum certain with no other contingencies, had agreed on the essential terms of the settlement.
Zaldivar’s later attempts to secure a self-serving “breakdown” were new offers to settle additional matters which could be rejected without nullifying the original agreement. See Bonagura v. Home Depot, 991 So.2d 902, 904 (Fla. 1st DCA 2008).
AFFIRMED.
KAHN, THOMAS, and ROBERTS, JJ., concur.