DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PEOPLE'S TRUST INSURANCE COMPANY,**
Appellant,

v.

**LILLIAN LAMOLLI,**
Appellee.

No. 4D21-2638

[December 21, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE20-006482.

Mark D. Tinker and Mary Lou Cuellar-Stilo of Cole, Scott & Kissane, P.A., Tampa, for appellant.

Wm. Allen Bonner of South Florida Appeals, PA, Miami, and Rene M. Delombard of Vargas Gonzalez Hevia Baldwin LLP, Coral Gables, for appellee.

WARNER, J.

People's Trust Insurance Company appeals a final judgment for the amount of an appraisal award. In granting final judgment, the court held that the preferred contractor endorsement in the insured's policy did not authorize People's Trust's preferred contractor to perform roofing repairs using subcontractors. The court based its decision on the fact that the preferred contractor did not have a roofing contractor's license, and thus could not personally make the repairs required by the covered loss. Therefore, the court granted judgment for the insured in the amount of the appraisal award. We reverse, as we conclude that the policy did not prohibit the preferred contractor from using subcontractors to perform work on the insured's home.

People's Trust insured the home of the appellee insured. The insurance policy included a preferred contractor endorsement ("PCE"). The PCE provided that in exchange for a credit of $179 per year on the insured's policy, People's Trust would have the option to use its preferred licensed Florida Contractor, Rapid Response Team, LLC ("RRT") to make claimed

repairs in lieu of a loss payment that People's Trust would otherwise owe the insured for the claims. The PCE included the following pertinent provisions:

> THIS ENDORSEMENT ALLOWS US AT OUR OPTION TO SELECT RAPID RESPONSE TEAM, LLC™ TO MAKE COVERED REPAIRS TO YOUR DWELLING OR OTHER STRUCTURES.
>
> "You" agree that in the event of a covered loss to "your" dwelling or other structures on the "residence premises," other than a sinkhole loss "we" at our option may select Rapid Response Team, LLC™ to repair "your" damaged property as provided by the policy and its endorsements.
>
> . . . .
>
> K. Loss Payment, the following is added:
>
> 4. When we have exercised our option to repair "your" damaged property pursuant to this Preferred Contractor Endorsement, we will repair the damaged property with material of like kind and quality without deduction for depreciation. Such repair is in lieu of issuing any loss payment that would otherwise be due under the policy.
>
> S. Appraisal, the following is added to the policy:
>
> Where "we" elect to repair:
>
> . . . .
>
> 2. The scope of repairs shall establish the work to be performed and completed by Rapid Response Team, LLC™. Such repair is in lieu of issuing any loss payment to "you" that otherwise would be due under the policy. The amount of loss shall establish only the initial amount paid to Rapid Response Team, LLC™ by "us", and any additional amounts required to complete repairs shall be "our" responsibility and will be paid to Rapid Response Team, LLC™ without regard to policy limits or the amount of initial payments.

Also, section J.6 of the general policy required that "[the insured] must execute all work authorizations to allow *contractors and related parties* entry to the property." (Emphasis supplied.)

The insured's underlying claim was for property damage to her home caused by Hurricane Irma in 2017. In an email, People's Trust accepted coverage of the claim, but stated that the damages did not exceed the insured's deductible. People's Trust also notified the insured, pursuant to the PCE, that it was electing to exercise its right to use RRT to repair any covered losses that exceeded the deductible amount.

The insured filed suit for breach of contract, alleging that People's Trust was refusing to provide full coverage under the insurance policy for the damages to her home. People's Trust filed a motion to abate and compel appraisal, a motion to compel its right to repair, and a motion to compel payment of the policy's deductible. The motion included a request that the insured "be compelled to attend appraisal, sign a work authorization, pay the applicable deductible to RRT, *and let RRT and/or its subcontractors* perform all covered repairs pursuant to the appraisal panel award to follow subject to that award exceeding the Policy's deductible." (Emphasis supplied.)

Upon stipulation by the parties, the court issued an agreed order for appraisal and to abate the litigation. The damage was then appraised at $59,170.03. This included the entire roofing system and screen enclosure damages. When RRT sought authorization from the insured for entry of its subcontractors onto the insured's premises to make the repairs, the insured objected and claimed that the policy required RRT alone to make the repairs, not subcontractors. As RRT was a general contractor and did not have a license to perform roofing or screening repairs, the insured argued RRT could not comply with the policy provisions.

The insured filed a motion to compel payment of the appraisal award, contending that RRT using subcontractors to perform the work on the home was a breach of the insurance policy. The insured claimed that she had agreed under the policy terms for only RRT to perform repairs. Because RRT could not perform the repairs to her roof and screen, she argued that she was entitled to a judgment for the amount of the appraisal.

At the final hearing, the court considered People's Trust's motion to compel repairs as well as the insured's motion to compel payment of the award. The court agreed with the insured that the policy permitted only RRT to make repairs, not any subcontractor. In its order compelling repairs by People's Trust, the court limited the ability of RRT to use

subcontractors:

> Pursuant to the plain language of the insurance policy between the parties, Peoples [sic] Trust Insurance may only elect to have Rapid Response Team perform the repairs and Rapid Response cannot then subcontract the repairs, including putting a new roof on Plaintiff's property, that Rapid Response Team cannot perform itself.

Because RRT could not perform the repairs without a roofing subcontractor, the court ultimately entered judgment for the insured in the amount of the appraisal award. People's Trust then filed this appeal.

The issue in this case involves the interpretation of an insurance contract, which is a question of law subject to de novo review. *See Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013).

People's Trust argues that the policy's language in conjunction with section 489.113(3), Florida Statutes (2016), governing general contractors, requires that RRT be allowed to subcontract the roofing repairs for which it is unlicensed.

The insured argues that the policy unambiguously gives People's Trust two options when a covered loss occurs: 1) pay the claim; or 2) employ RRT to perform the repairs if it is licensed to do so. She further argues that the lack of discussion of subcontractors renders the policy ambiguous as to this issue, and that this silence must be construed against People's Trust as the contract's drafter. Therefore, she argues, People's Trust is required to pay her the appraisal award.

We agree with People's Trust that the policy does not require RRT alone to make repairs, as the policy contemplates the use of subcontractors.

"We begin with the guiding principle that insurance contracts are construed in accordance with 'the plain language of the polic[y] as bargained for by the parties.'" *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 33 (Fla. 2000)) (alteration in original). "[T]erms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical, and sensible interpretation consistent with the intent of the parties—not a strained, forced, or unrealistic construction." *Siegle v. Progressive Consumer Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249, 253 (Fla. 4th DCA 1972)).

4

When "[a] provision of the policy is ambiguous and susceptible to more than one interpretation, the 'meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy.'" *Meister v. Utica Mut. Ins. Co.*, 573 So. 2d 128, 130 (Fla. 4th DCA 1991) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). However, while ambiguities are to be construed against the drafter, "a court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction." *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. 4th DCA 2003). An insurance policy's plain meaning should be construed as it would be understood by an ordinary person. *Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999, 1001 (Fla. 4th DCA 2010).

A contract's silence does not always create an ambiguity. The Florida Supreme Court has held that "[i]t is fundamental that the laws of Florida are a part of every Florida contract." *Dep't of Ins., State of Fla. v. Tchrs. Ins. Co.*, 404 So. 2d 735, 741 (Fla. 1981); *see also Per Jonas Ingvar Gustafsson v. Aid Auto Brokers, Inc.*, 212 So. 3d 405, 408 (Fla. 4th DCA 2017); *S. Crane Rentals, Inc. v. City of Gainesville*, 429 So. 2d 771, 773 (Fla. 1st DCA 1983) ("The laws which exist at the time and place of the making of a contract enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including those laws which affect its construction, validity, enforcement or discharge."). Thus, a contract's silence as to an issue does not create a latent ambiguity where there is applicable law on that issue. *See S. Crane Rentals*, 429 So. 2d at 773; *see also Brandt v. Brandt*, 525 So. 2d 1017, 1020 (Fla. 4th DCA 1988).

We conclude that the insurance policy allows RRT to use subcontractors in completing repairs on an insured's covered property both by its terms as well as by existing law. As to the policy language itself, the policy requires the insured to "execute all work authorizations to allow *contractors and related parties* entry to the property." (Emphasis supplied.) If RRT were the only entity authorized by the insurance policy to work on the property, the policy would not use the plural of contractor or related party. Thus, the policy contemplates that entities or persons other than RRT may perform work on the property.

The insured argues that because a company "only act[s] through its employees," it is reasonable to interpret the PCE's reference to "related parties" as referring to RRT's own employees, citing *Vesta Constr. & Design, L.L.C. v. Lotspeich & Assocs., Inc.*, 974 So. 2d 1176, 1180 (Fla. 5th DCA 2008). However, for that reason it would be a "redundancy or surplusage" for "related parties" to mean RRT's employees. As RRT itself

5

is authorized to enter, and since RRT may only act through its employees, RRT's employees would already be authorized to enter. "[R]ules of construction require that no word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it[.]" *Royal Am. Realty, Inc. v. Bank of Palm Beach Tr. Co.*, 215 So. 2d 336, 338 (Fla. 4th DCA 1968). Therefore, in order to give the phrase "related parties" meaning and make it consistent with other parts, the PCE necessarily includes any party necessary to complete the repairs. *See id.* Such parties reasonably would include subcontractors, as would the reference in the policy to the plural "contractors."

Furthermore, application of existing law shows that a general contractor is not only authorized, but required, to use subcontractors properly licensed for the work to be performed. Section 489.113, Florida Statutes (2016), covering the requirements for general contractors in the state, provides:

> (3)   A contractor shall subcontract all electrical, mechanical, plumbing, roofing, . . . unless such contractor holds a state certificate or registration in the respective trade category, however:

> (a)   A general, building, or residential contractor, except as otherwise provided in this part, shall be responsible for any construction or alteration of a structural component of a building or structure, . . .

By law, a general contractor must subcontract roofing repairs where it does not have a license for such trade, but the general contractor remains responsible for any roofing construction or alteration. Thus, even if a subcontractor was used to repair the insured's roof, RRT would remain ultimately responsible for the subcontractor's work.

Pursuant to the insurance policy, the insured agreed to People's Trust's use of RRT as the general contractor. And in order to comply with the statute, RRT must use a licensed subcontractor to complete the roofing repairs. Further, the policy contemplates the use of other "contractors and related parties" and a "reasonable, practical, and sensible interpretation" of that language would include subcontractors. *See Siegle*, 819 So. 2d at 736.

**Conclusion**

The court erred in determining that the insurance policy did not authorize the use of subcontractors to make repairs. The policy allows People's Trust to use RRT as its preferred contractor. Because RRT is a general contractor, it must use a licensed subcontractor to complete roof repairs. Both the policy language and existing law authorize the use of subcontractors to effectuate repairs. We reverse and remand for vacation of the final judgment and for further proceedings.

*Reversed and remanded.*

DAMOORGIAN and CONNER, JJ., concur.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***